McCALEB, Justice.
 

 International Shoe Company brought this suit against the Collector of Revenue to re
 
 *249
 
 cover state income taxes amounting to $6191.83, which it paid under protest for the fiscal years ending November, 1959 and November, 1960. Plaintiff pleads the provisions of Public Law 86-272 (73 U.S.Stat. 555; 15 U.S.C.A. § 381), as a bar to the State's right to collect the income taxes for the years in question.
 

 Previously, this Court held, under an identical state of facts, that plaintiff was liable for state taxes upon its net income arising from its operations in Louisiana. International Shoe Company v. Fontenot, 236 La. 279, 107 So.2d 640, certiorari denied 359 U.S. 984, 79 S.Ct. 943, 3 L.Ed.2d 933. That case was a counterpart of Brown-Forman Distillers Corp. v. Collector of Revenue, 234 La. 651, 101 So.2d 70, in which the Supreme Court of the United States dismissed an appeal and also denied certiorari. Sec 359 U.S. 28, 79 S.Ct. 602, 3 L.Ed.2d 625.
 

 In February of 1959, the Supreme Court rendered its judgment in the consolidated cases Northwestern States Portland Cement Company v. Minnesota and Williams v. Stockham Valves and Fittings, Inc., 358 U. S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292. This decision upheld the contentions of the states of Minnesota and Georgia that a nondiscriminatory properly apportioned net income tax could be levied and collected from foreign corporations not authorized to do business in the taxing states whose activities in those states were purely of an interstate character. The ruling was. based upon a determination that the net income derived from the operations of the corporations within the taxing states provided a sufficient connection or “nexus”' with Minnesota and Georgia for taxing purposes. There, each corporation maintained an office in the taxing state from which its-salesmen solicited orders from local customers, which orders were transmitted for acceptance outside of the state and, where accepted, were fulfilled by the shipment of tangible goods into the state through the channels of interstate commerce.
 

 Presumably, on the authority of the-Northwestern-Stockham decision, the Supreme Court later denied certiorari in the-Brown-Forman case and International Shoe Company v. Fontenot, although these corporations did not have local offices from which the operations were conducted.
 

 Subsequent to the denial of certiorari in the Louisiana cases, Congress passed Public Law 86-272. The pertinent section of that statute (Title I, Section 101), provides as follows:
 

 “§ 101. Imposition of net income tax— Minimum standards
 

 “(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959,
 
 a net income tax
 
 on the income derived within such State
 
 *251
 
 by any person from interstate commerce
 
 if the only business activities within such State
 
 by or on behalf of such person during such taxable year are either, or both, of the following:
 

 “(1)
 
 the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property,
 
 which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
 

 “(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).” (Italics ours).
 

 Plaintiff is a Delaware corporation having its principal place of business in St. Louis, Missouri. According to the admitted facts, the only activities conducted by plaintiff within Louisiana during the relevant period were that it sent into this State travelling salesmen who solicited orders for shoes, which orders were forwarded to the home office and, when accepted, were filled and the merchandise shipped from outside the State. Plaintiff had no office or warehouse or any place of business of any sort within this State.
 

 It is not denied by the Collector that the income taxes for the years 1959 and 1960 assessed against plaintiff were violative of the Federal Statute. His position is that Congress did not have the power to adopt Public Law 86-272 and’ specially asserts that it was without authority to prohibit the states from levying taxes for their support under
 
 [1]
 
 .the guise of regulating interstate commerce. The argument runs that, since the several states expressly abandoned their power to tax imports and exports and to levy tonnage taxes in Section 10 of Article 1 of the Federal Constitution, they retained their historic power of taxation in all other areas and that, therefore, Public Law 86-272 necessarily impinges upon the rights reserved to them by the Tenth Amendment to the Constitution.
 

 Plaintiff, on the other hand, contends that Congress was vested with plenary power to enact P.L. 86-272 under the Commerce Clause (Clause 3 of Section 8 of Article 1 of the Federal Constitution) and implicit in this power to regulate commerce is the power to prohibit the states from levying taxes on multi-state businesses engaged in interstate commerce whenever Congress finds, as it has in this case, that such taxes burden the free flow of trade. Plaintiff further pleads that the Act of Congress, being the supreme law of the land (Clause
 
 *253
 
 2, Article 6 of the Constitution), overrides all state laws in conflict therewith.
 

 After a hearing on these issues the district judge, in a well-considered opinion, found for plaintiff and judgment was entered against the Collector requiring him to refund the monies paid under protest, plus legal interest, as provided in R.S. 47:1576. The Collector has appealed, reurging his contention that P.L. 86-272 transcends the authority delegated to Congress under the Commerce Clause and is, therefore, unconstitutional.
 

 Since the admitted facts of the case disclose that plaintiff is engaged purely in an interstate operation, we approach the issue of the constitutionality of P.L. 86-272 with some diffidence. For, in view of the Supremacy Clause of the Federal Constitution,
 
 [1]
 
 and the fact that Congress has acted
 
 ostensibly
 
 within the ambit of its delegated power to regulate commerce, it would appear that congressional occupation in this field has rendered ineffective any state legislation on the subject and it might well be said that the state judiciary is restrained by the Constitution from considering the invalidity of the Federal Act. Manifestly, if conflict exists between the power of Congress to regulate commerce and the State’s right to impose a tax affecting such commerce, the Act of Congress is supreme
 
 [2]
 
 no matter whether the burden of the tax be direct or indirect.
 

 Nevertheless, we prefer not to rest our decision herein upon plaintiff’s challenge of our'right to consider the validity of P.L. 86-272. The case is one of national' importance
 
 [3]
 
 which involves principally a clash between the right of the several states, acting under their taxing powers, to require that interstate business bear a fair share of the cost of local government in re
 
 *255
 
 turn for benefits received and the power •of Congress to regulate the free flow of interstate commerce by prohibiting the ■states from levying an income tax on persons engaged in interstate commerce whose •only connection with the State is the sending of salesmen therein to solicit orders. The Collector, and counsel for amici curiae aligned with him, are here contending that the Supremacy Clause is inapplicable because the Act of Congress is not a regulation of commerce and, consequently, the law was not “ * * * made in Pursuance * * * ” of the Constitution. And, while plaintiff alleged the Supremacy Clause as one of the grounds for upholding P.L. 86-272, the point has neither been pressed in oral argument nor has much emphasis been .given it in the voluminous briefs filed in plaintiff’s behalf.
 

 Taking into account all these circumstances, we feel that it is incumbent upon us to decide the main issue, even at the risk, perhaps, of encroaching the periphery of our judicial authority as circumscribed by the Supremacy Clause.
 

 The initial point raised in the brief of amici curiae representing the 19 states is that the imposition of a tax measured on net income derived from sources within a state, albeit in interstate transactions, does not constitute a regulation of interstate commerce and, hence, Congress is without power to forbid it. In support of this proposition, much dependence is placed on an article by Mr. Robert L. Roland (formerly Collector of Revenue of Louisiana) appearing in 46 Va.Law Review 1172, entitled “Public Law 86-272: Regulation or Raid”. It is declared at page 1184 of that article that “There is no real basis to dispute that a tax upon net income derived from interstate commerce is not a tax upon such commerce.” As authority for this statement, the author cites Peck & Company v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049; United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135; Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090 and McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, and quotes excerpts from language contained in some of those opinions.
 

 It is true that there is language to this effect to be found in the opinions to which Mr. Roland refers (and there are others) but all of these authorities nonetheless recognize that state income taxes levied on interstate operations are indirect burdens which may, in certain instances, become a deterrent to the flow of interstate commerce. What these cases stand for, as we shall hereinafter demonstrate, is that, while income taxes levied on net profits derived from interstate activities are indirect burdens, as distinguished from tax
 
 *257
 
 levies measured on gross receipts (see Spector Motor Service Inc. v. O’Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573, for example) which are direct burdens on such commerce, income taxes are not to be regarded, in the absence of action by Congress, either as a regulation of commerce or as burdening the free flow of commerce to such an extent as to be violative of the commerce clause of the Constitution or to deprive the taxpayers of due process under the Fourteenth Amendment, in instances where the activities of the taxpayers are deemed to have sufficient nexus with the taxing state.
 

 Of the many matters presented to the Supreme Court concerning the unconstitutionality of state taxation of activities in interstate commerce, there is none in which the Court has ever suggested that Congress has not retained plenary power to regulate the activity by prohibiting the imposition of a state tax when it determines such tax to unduly burden the free flow of such commerce. Indeed, these cases are authority for holding that the Supreme Court has been able to act negatively only because Congress has not heretofore spoken.
 

 As early as 1824, the Supreme Court in Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23, recognized that the power to regulate commerce like all others vested in Congress,
 
 “
 
 * * * is complete in itself, may be exercised to its utmost extent and acknowledges no limitations, other than áre prescribed in the Constitution * *
 

 In 1883 the Court stated in Parkersburg & Ohio River Transportation Co. v. City of Parkersburg, 107 U.S. 691, 701, 2 S.Ct. 732, 740, 27 L.Ed. 584, “It is the congress, and not the judicial department to which the constitution has given the power to regulate commerce * * * among the several states.” And in the same case it was made clear that “In action by Congress” with respect to its regulatory powers “ * * * is not to be taken as a declaration that nothing shall be done with respect to them, but is rather to be deemed a declaration that for the time being, and until it (Congress) sees fit to act, they may be regulated by state authority.” (Word in parentheses ours).
 

 As to taxation, Mr. Justice Jackson, concurring in Northwest Airlines, Inc. v. State of Minnesota, 322 U.S. 292, at 303, 304, 64 S.Ct. 950, at 956, 88 L.Ed. 1283, 153 A.L.R. 245, stated:
 

 “Congress has not extended its protection and control to the field of (state) taxation, although I take it no one denies that constitutionally it may do so. It may exact a single uniform federal tax on the property or the business to the exclusion of taxation by the states. It may subject the vehicles or other incidents to any type of state and local taxation, or it may declare
 
 *259
 
 them tax-free altogether.” (Word in parentheses ours'). • • •
 

 See also Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274,
 
 91
 
 L.Ed. 265,
 
 [4]
 
 and United States v. South-Eastern Underwriters Ass’n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440.
 

 One of the comprehensive statements of the role of the Supreme Court in determining whether particular state taxation operates to unduly burden interstate commerce is to be found in Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 165, 74 S.Ct. 396, 400, 98 L.Ed. 583, where Mr. Justice Clark, as organ of the Court, observed :
 

 “ * * * Under the Commerce Clause interstate commerce and its instrumentalities are not totally immune from state taxation,
 
 absent action by Congress.
 
 Frequently it has been said that interstate business must pay its way (citations omitted) ; and the Court has done more than pay lip service to this idea. Numerous cases have upheld state levies where it is thought that the tax does not operate to discriminate against commerce or unduly burden it either directly
 
 or by
 
 the'
 
 possibility of multiple taxation resulting from other taxes of the same sort being imposed by other states.
 
 The recurring problem is to resolve a conflict between the Constitution’s mandate that trade between the states be permitted to flow freely without unnecessary obstruction from any source, and the state’s rightful desire to require that interstate business bear its proper share of the costs of local government in return for benefits received. Some have thought that the wisest course would be for this Court to uphold all state taxes not patently discriminatory,
 
 and wait for Congress to adjust conflicts when and as it wished.
 
 But this view has not prevailed,
 
 and the Court has therefore been forced to decide in many varied factual situations
 
 whether the application of a given state tax to a given aspect of interstate activity violates the Commerce Clause. * * * ” (Italics and words in parentheses ours).
 

 And in the recent Northwestern-Stock-ham cases, Justice Clark again remarked:
 

 
 *261
 
 “Commerce between the States having grown up like Topsy,
 
 the Congress meanwhile not having imdertaken to regulate taxation of it,
 
 and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. * * *
 

 “It has long been established doctrine that the Commerce Clause gives exclusive power to the Congress to regulate interstate commerce,
 
 and its failure to act on the subject in the area of taxation
 
 nevertheless requires that interstate commerce shall be free from any direct restrictions or impositions by the States. * * * ” (Italics ours)
 

 The foregoing authorities of the Supreme Court, and there are many others, conclusively establish that, until Congress acts in the field of interstate commerce, the courts, perforce, are required to determine whether a particular state tax unconstitutionally burdens or affects the free flow of commerce. But, when Congress speaks, the right of the judiciary to determine whether the burden is undue or not is foreclosed.
 

 What, then, is the effect of the failure of Congress to exercise its power to regulate state taxation affecting interstate activities for over 170 years ? Counsel for one of the amici curiae says that Congress, by not legislating, has, in effect, forfeited its right to do so — at least, that it is bound by the pronouncements of the Supreme Court of the United States and cannot now take a different course of action in those areas of taxation which the Court has heretofore sanctioned.
 

 We think that counsel is clearly in error — for once the power is given it continues as a legislative power and may be exerted at any time. Failure to act does not curtail or limit the power. Nor does the exertion of judicial power by negative action, which as we have shown, the Court was able to exercise only because Congress had not acted, create an estoppel against subsequent contrary legislative action.
 

 Since Congress has admittedly plenary power to regulate commerce, it follows, of course, that it had the power to find as a fact that enactment of P.L. 86-272 was essential to prevent an undue burden to the free flow of commerce between the states.
 

 The Collector, and the amici curiae supporting his position, take issue. They contend that Congress may not interfere with the taxing power of the States. This position, however, is founded on the predicate that the Act in question is not a regulation of commerce. But, here again, counsel err for the simple reason that Congress,
 
 *263
 
 having the power to regulate commerce, has the primary right to consider and determine whether the burden of the tax adversely affects interstate commerce and, if it finds that it does, to take such measures as it deems effective to suppress it. See National Labor Relations Board v. Jones & Laughlin S. Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, citing Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839 and Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229.
 

 In South Carolina State Highway Department v. Barnwell Bros., 303 U.S. 177, 189, 58 S.Ct. 510, 516, 82 L.Ed. 734, the Court said:
 

 "Congress, in the exercise of its plenary power to regulate interstate commerce,
 
 may determine whether the burdens imposed on it by state regulation, otherwise permissible, are too great, and may, by legislation designed to secure uniformity or in other respects to protect the national interest in the commerce, curtail to some extent the state’s regulatory power. But that is a legislative, not a judicial function, to be performed in the light of the congressional judgment of zvhat is appropriate regulation of interstate commerce,
 
 and the extent to which, in that field, state power and local interest should be required to yield to the national authority and interest.” (Italics ours).
 

 To the same effect is Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 and Pennsylvania v. Wheeling and Belmont Bridge Co., 18 How. 421, 15 L.Ed. 435.
 

 In the instant case, although it was professed by counsel aligned with the Collector that P.L. 86-272 was not given careful consideration and was rushed through to final passage during the last days of the Session of the 86th Congress, it appears from the record that various Committees handling the legislation held a number of hearings and considered all of the pros and cons concerning the legislation. After due deliberation, these Committees concluded that the uncertainty of interstate tax liability and inevitable new reporting, accounting and tax costs presented a real threat which was inducing retreat of business from the free markets and the deprivation of consumer goods and services to the detriment of the American economy. See State and Local Tax Report No. 22, Sec. 2, page 4. The report of the Senate Finance Committee states:
 

 “Your committee has been increasingly concerned with the growing complexity of the tax structures devised by the several levels of government. * * This lack of coordination and uniformity has resulted in the creation of
 
 *265
 
 sprawling diverse revenue systems with underlying potential for great harm for the economy of the country and to the individual taxpayers to such an extent that urgent remedial action appears necessary.
 

 “Repeated efforts over the years, in the form of advisory commissions and committees, have failed to satisfactorily resolve the current tax dilemma, * * *
 

 “The duplication and, indeed, the triplication in the field of income taxation, requires that prompt attention be given to the dangers inherent in the widespread exploitation of tax sources among the governmental levels.”
 

 The judiciary is neither concerned with the wisdom of a law nor whether the means of regulation chosen are reasonably adapted to the end sought. Courts do not sit as legislatures and do not have the facilities available to Congress for weighing all conflicting interests, State and National, in determining when and how much the State regulatory power shall yield to the larger interest of a national commerce. See South Carolina Highway Department v. Barnwell Bros., supra. When the action of Congress is within the scope of its power, fairly debatable questions as to the reasonableness, wisdom and propriety of the legislation is not for the determination of the courts but for the legislative body on which rests the duty and responsibility of these decisions.
 

 Congress, by P.L. 86-272, has found as a fact that an undue burden was placed on interstate commerce by the action of 35 states in enacting various income tax statutes when applied to the situation here presented — that is, the sending of salesmen into the several states to secure orders for goods which were to be shipped in interstate commerce. This finding, we think, furnishes a full answer to the final contention of counsel aligned with the Collector— that is, that the law is patently discriminatory against local or intrastate business concerns because it employs distinctions without substance which result in unconstitutional classifications prohibited by the due process clause of the Fifth Amendment to the Federal Constitution.
 
 [5]
 

 We conclude that the statute in question is a proper exercise of the plenary power of Congress over commerce and that the State law must yield insofar as it is sought to be applied to the activities involved herein.
 

 The judgment of the district court is affirmed.
 

 HAMITER, J.j concurs in the result.
 

 [2]
 

 . See McCulloch v. The State of Maryland, 4 Wheat. 316, 4 L.Ed. 579; Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552. See also Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23; Hauenstein v. Lynham, 100 U.S. 483, 25 L.Ed. 628; Sinnot v. Davenport, 22 How. 227, 16 L.Ed. 243; Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 and Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754.
 

 [3]
 

 .In this Court briefs by amici curiae have been filed on behalf of the Collector by the attorneys general of 19 states. These-states are Alaska, Arizona, Arkansas, Colorado, Georgia, Hawaii, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, North Dakota,
 
 Oregon,
 
 Pennsylvania, South Dakota and Washington. Other amici curiae briefs have been filed on behalf of plaintiff by 40 nation-wide trade associations representing 71,105 multi-state merchandisers and 17 state manufacturers’ associations.
 

 [4]
 

 . There, the Court stated: “The power to tax is a dominant power over commerce. Because the greater or more threatening burden of a direct tax on commerce is coupled with the lesser need to a State of a particular source of revenue, attempts at such taxation have always been more carefully scrutinized and more consistently resisted than police power regulations of aspects of such commerce. The task of scrutinizing is a task of drawing lines. This is the historic duty of the Court
 
 so long as Congress does not undertake to make specific arrangements "between the national government and the States in regard to revenue from interstate commerce.”
 
 (Italics ours).
 

 [5]
 

 . Indeed, it may well be doubted that the parties here are entitled to raise this question. The rights protected by the Fifth Amendment are in favor of persons, not States, and the alleged injured firms are not parties to the litigation.