STATE ex rel. CIBA PHARMACEUTICAL PRODUCTS, INC., a Corporation, Respondent,

v.

The STATE TAX COMMISSION of the State of Missouri, Appellant.

No. 50015.

Supreme Court of Missouri,

En Banc.

Sept. 14, 1964.

Rehearing Denied Oct. 12, 1964.

Thomas F. Eagleton, Atty. Gen., Eugene
G. Bushmann, Asst. Atty. Gen., Jefferson
City, for appellant.

Hendren & Andrae, by John E. Burruss,
Jr., and Kenneth W. Shrum, Jefferson City,
for respondent.

Walter E. Alessandroni, Atty. Gen. of
Pennsylvania, Edward Friedman, George
W. Keitel, Deputy Attys. Gen., Louis F.
Del Duca, Asst. Atty. Gen., Richard H.
Wagner, Harrisburg, Pa., Robert Y. Thorn-
ton, Atty. Gen. of Oregon, Theodore W. de
Looze, Carlisle B. Roberts, Asst. Attys.
Gen., Salem, Or., Frank J. Kelley, Atty.
Gen., of Michigan, Robert A. Derengoski,
Sol. Gen., T. Carl Holbrook and William D.
Dexter, Asst. Attys. Gen., Lansing, Mich.,
amici curiae.

DALTON, Judge.

This cause originally assigned to Division Two of this Court was docketed for hearing at the September Session 1963, but after briefs were filed the cause was transferred without opinion to Court en Banc, where it was subsequently argued and submitted. It is an appeal by the State Tax Commission from a judgment entered by the Circuit Court of Cole County reversing an order of the Tax Commission, which order affirmed certain State income tax assessments by the Department of Revenue against Ciba Pharmaceutical Products, Inc.

, Ciba Pharmaceutical Products, Inc., a corporation, hereinafter referred to as respondent, was organized under the laws of the State of New Jersey, with its main office at Summit, New Jersey. Respondent is a pharmaceutical house which manufactures drugs and distributes them throughout the United States (into all of the fifty states). On February 2, 1961, and while respondent was authorized to transact business in the State, the Department of Revenue for the State of Missouri made certain assessments of Missouri income taxes against respondent for the tax years of 1956, 1957, 1958 and 1959, together with interest and penalties, as hereinafter set out in the Commission's Findings of Facts.

In respondent's petition for review of the several income tax assessments and decisions of the State Revenue Department with reference thereto, it was admitted that notices of the mentioned income tax assessments were duly sent to respondent on February 2, 1961; that respondent had filed petitions for the abatement of the mentioned assessments; and that the said petitions had been overruled. The said petition for review did not question the reasonableness or correctness of the amounts fixed by the several assessments of income taxes, interest and penalties for the several years under review, but based its defense solely on a particular Federal statute, to wit: Public Law 86–272, Title I, §§ 101–104; 73 Stat. 555, 556; 15 U.S.C.A. §§ 381–384, hereinafter referred to as P.L. 86–272, which said statute was alleged to give respondent *complete income tax immunity under the facts stated in the petition for review* and to prohibit the State of Missouri from imposing an income tax on respondent. Respondent was granted a hearing on its petition for review before the State Tax Commission on February 7, 1962.

At the mentioned hearing both respondent and the Department of Revenue offered oral testimony. There were no conflicts in the evidence and the State Tax Commission found the facts in conformity with this evidence. Appellant's brief correctly reviews the facts shown by the transcript of the testimony and "respondent accepts and adopts the *facts* set forth in the Statement of Facts in Appellant's brief." Instead of quoting appellant's approved statement we shall set out the State Tax Commission's Findings of Fact, which we find to be in conformity with the appellant's approved statement. It is as follows:

"CIBA Pharmaceutical Products, Inc., hereinafter referred to as CIBA, is a corporation organized and existing under the laws of the State of New Jersey. CIBA was authorized to do business in Missouri on July 23, 1959. A certificate of withdrawal was issued on December 30, 1961. During the period of registration CIBA maintained a registered agent and a registered office in Missouri. On February 2, 1961 the Department of Revenue made an assessment of Missouri income tax against CIBA for the following tax years:

| Year | Tax | Interest | Penalty | Total |
|------|------|----------|---------|-------|
| 1956 | $1658.40 | $373.14 | $414.60 | $2446.14 |
| 1957 | 1658.40 | 273.64 | 414.60 | 2346.64 |
| 1958 | 1554.93 | 163.27 | 388.73 | 2106.93 |
| 1959 | 1576.53 | 70.94 | 394.13 | 2041.60 |

"CIBA sells pharmaceutical products to Missouri retail druggists and wholesale pharmaceutical companies. It employs 'professional service representatives' to solicit orders from Missouri druggists. These orders are filled out by the representative and sent to CIBA's home office in Summit, New Jersey, for approval or disapproval. If an order is approved then it is completed by the shipment into Missouri of goods which are stored at Chicago, Illinois. While soliciting the retail druggist, CIBA's representatives frequently leave brochures and sometimes assist the pharmacist in taking inventory. CIBA has about twelve representatives in Missouri, each of who has an assigned territory. The representative who testified in this case stated that he was a life-long Missouri resident. He presently lives in Missouri. He also owns property in Missouri. CIBA supplies him with an automobile and reimburses him for his expenses. The automobile stays in Missouri at all times.

"The representatives operate from their homes in Missouri, CIBA has no sales office or warehouse in Missouri. The representatives in the St. Louis area assemble periodically for sales meetings. These meetings are called by the district manager, also a representative, and are held in St. Louis, usually in motel rooms. These meetings are of an educational nature. Representatives acquire information on particular products to be sold and also are instructed on company policy.

"CIBA's representatives also visit pharmacists at hospitals located in their assigned area. The procedure followed with hospital pharmacists is comparable with the solicitation made from retail druggists. The representatives also visit or 'detail' the doctors in their territory. The representatives explain the therapeutic value of CIBA's products to the doctors. They tell what the product is, what it will do, what dosage is desirable and what its side effects might be. Literature is left with the doctor along with samples of CIBA's products. The main object in 'detailing' the

doctors is to persuade him to write prescriptions for CIBA's products when prescribing medicines for his patients."

As stated, respondent defended this case before the State Tax Commission solely on the basis of the testimony claimed to bring respondent within the income tax immunity provisions of what is referred to as Public Law 86–272 (15 U.S.C.A. § 381). The applicable part of the Federal statute is as follows:

"§ 381. Imposition of net income tax— Minimum standards

"(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1). * * *

"(b) The provisions of subsection (a) of this section shall not apply to the imposition of a net income tax by any State, or political subdivision thereof, with respect to—

"(1) any corporation which is incorporated under the laws of such State; or

"(2) any individual who, under the laws of such State, is domiciled in, or a resident of, such State. * * *"

"§ 382. Assessment of net income taxes; limitations; collection

"(a) No State, or political subdivision thereof, shall have power to assess, after September 14, 1959, any net income tax which was imposed by such State or political subdivision, as the case may be, for any taxable year ending on or before such date, on the income derived within such State by any person from interstate commerce, of the imposition of such tax for a taxable year ending after such date is prohibited by section 381 of this title.

"(b) The provisions of subsection (a) of this section shall not be construed—(1) to invalidate the collection, on or before September 14, 1959, of any net income tax imposed for a taxable year ending on or before such date, or (2) to prohibit the collection, after September 14, 1959, of any net income tax which was assessed on or before such date for a taxable year ending on or before such date."

Since the "Conclusions of Law" reached by the State Tax Commission conform in material respects to its theory on this appeal and conflict with the circuit court's decision from which the State Tax Commission took its appeal to this Court, we shall set out appellant's Conclusions of Law, based upon the admitted facts as found by appellant.

"CIBA seeks to be excluded from the imposition of the Missouri income tax law by the protection granted to foreign corporations whose income in Missouri is earned while engaging in interstate commerce. Public Law 86–272, 75 Stat. 555, 15 U.S. C.A. §§ 381–384. This new Federal statute prohibits any State from imposing a net income tax on income earned by any person from interstate commerce if the only activity that person has with the taxing State is (1) solicitation of orders by such person or his representative for sales of tangible personal property, which orders are sent out of the taxing state for approval or disapproval, and which orders are filled by shipment from a point out of the state; or, (2) solicitation in the manner set out in (1) above when it is in the name of or for the benefit of a prospective customer.

"This new Federal statute sets out a minimum standard of business activity in which a non-resident may engage and yet be exempt from the payment of Missouri income tax. The result being that any activity which is performed in Missouri and which goes beyond the minimal amount set out in the statute, places the non-resident under the taxing jurisdiction of the state involved. This exemption is to be strictly construed against the person claiming such protection.

"In the case at hand, CIBA has engaged in certain business activity in Missouri which goes beyond the statutory minimum. When CIBA's representatives 'detail' doctors in Missouri they are promoting and encouraging intrastate activities. These intrastate activities are performed when Missouri doctors write prescriptions for their Missouri patients who in turn purchase pharmaceuticals from Missouri druggists.

"CIBA, although a non-resident, has employed resident agents to make their solicitations and 'detail' Missouri doctors. Public Law 86–272 specifically provides that it shall not apply with respect to (1) any corporation which is incorporated under the laws of the taxing state; or (2) any individual who under the laws of the taxing state is domiciled in, or a resident of such state. These agents operate CIBA's automobiles solely within Missouri and receive the full protection of Missouri laws as other residents do. They also own property in Missouri. The employment of a Missouri resident by CIBA and the performance of a resident agent's duties are also intrastate activities. Sales meetings which are held in Missouri by resident agents of CIBA are intrastate activities, all of which go beyond the minimal business operations established by Public Law 86–272.

"As a voluntary act CIBA subjected itself to the jurisdiction of the State of Missouri when it complied with Chapter 351,

RSMo 1959 by registering with the Secretary of State and obtaining authorization to transact business in Missouri. When this authorization was granted CIBA was placed in the same status as domestic corporations. It had the same rights and duties as Missouri corporations. It had access to Missouri courts and administrative bodies. The assessment for income tax made by the Department of Revenue was imposed during the period CIBA was authorized to do business in Missouri."

On certiorari to the Circuit Court of Cole County, that Court found, as follows: "* * * that Relator, CIBA Pharmaceutical Products, Inc., is a New Jersey corporation, and that the company was not doing business in this state during the years concerned, and was not licensed to do business in this state except during the period July 23, 1959, to December 31, 1959. Therefore, the Court finds that Relator did not come within the taxing provisions of Section 143.040, RSMo. (1959), except during the period July 23, 1959, to December 31, 1959, and was not subject to the Missouri Income Tax Law except during said period.

"The Court further finds that the activities of Relator, CIBA Pharmaceutical Products, Inc., came within the minimum standards prescribed by Public Law 86–272, Title I, § 101, 73 Stat. 555, 15 U.S.C.A. § 381, and that the State of Missouri, therefore, is prohibited by said law from imposing its net income tax upon Relator for the years concerned. The Court further finds, therefore, that, even if Relator came within the taxing provisions of Section 143.040, RSMo. (1959), the State of Missouri was prohibited from applying the provisions of said Section to Relator by the provisions of Public Law 86–272, Title I, § 101, 73 Stat. 555, 15 U.S. C.A., § 381, and Public Law 86–272, Title I, § 102, 73 Stat. 556, 15 U.S.C.A. § 382." The court further found the order affirming the income tax assessments to be "unlawful" and reversed the judgment entered by the State Tax Commission. After motion for a new trial was filed, heard and overruled

the State Tax Commission took an appeal to this Court.

Appellant's first assignment is that: "The trial court erred in reversing appellant's decision because *the court substituted its judgment on the evidence* for that of appellant, and failed to find that appellant's decision was supported by *competent and substantial evidence* upon the whole record and *was not against the overwhelming weight of the evidence.*" (Italics ours.)

Appellant argues that "the trial court violated the precepts of administrative law and the dictates of this Court by *substituting its judgment on the evidence* for that of appellant's and by failing to apply the proper standard to determine whether appellant's decision was supported by competent and substantial evidence upon the whole record." (Italics ours.) Appellant cites Koplar v. State Tax Commission, Mo.Sup., 321 S.W.2d 686, 694; Cupples Hesse Corp. v. State Tax Commission, Mo.Sup., 329 S.W. 2d 696, 702; Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623, 627; and other cases. Appellant also says: "The issue is simply whether there is *substantial and competent evidence* to show that respondent's business activities in Missouri are neither less than, nor equal to, the minimum standard set forth in the federal statute"; and that "To reach the legal conclusion that respondent fell within the coverage of Public Law 86–272, the trial court had *to weigh the evidence* for itself—*substitute its judgment on the evidence* for that exercised by appellant." (Italics ours.)

In this connection appellant insists that it has "always contended that its decision in this matter was subject to judicial review," but that "the facts in this case are controverted and in dispute"; and that "appellant found certain facts to be true and declared the inescapable legal conclusion resulting from such finding," while the trial court substituted its own judgment on the evidence for that of the appellant and found facts contrary to appellant's findings, and thus erred. Appellant argues that "re-

spondent fails to explain to which set of facts the law is to apply—those found by appellant or those found by the trial court." However, appellant has failed to point to any conflicts in the evidence but, instead, refers to the trial court's conclusions of law on the *admitted facts* as found by the State Tax Commission.

We are not *here* concerned with *the evidence* in the case, as such. There were no conflicts in the evidence and respondent accepted and adopted the facts set forth in the Statement of Facts in appellant's brief, but the important matter is not that respondent and appellant agreed upon appellant's statement of the facts shown by the evidence in the case. The really important fact is that the State Tax Commission found the *facts* to be exactly in accordance with the oral testimony offered by respondent and appellant and the issues now presented are only issues of law.

 On appeal from a judgment on an agreed statement of facts, or where the facts are not in dispute, the only question is whether the judgment is the proper legal conclusion. Jewel Tea Co. v. City of Carthage, 257 Mo. 383, 165 S.W. 743; Murphy v. Doniphan Telephone Co., 347 Mo. 372, 147 S.W.2d 616, 619; Corp v. Joplin Cement Co., Mo.Sup., 337 S.W.2d 252, 258 [6] [7, 8]; Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77, 80 [3]; Wagner v. Unemployment Compensation Commission, 355 Mo. 805, 198 S.W.2d 342, 344 [2]; Drey v. State Tax Commission, Mo.Sup., 323 S.W.2d 719, 722 [2]; Browning v. City of Poplar Bluff, Mo. App., 370 S.W.2d 179, 180; and see Article V, § 22, Const. of Missouri 1945, V.A.M.S.; 73 C.J.S. Public Administrative Bodies and Procedure § 228, p. 599. The assignment is overruled.

Appellant further contends that "the trial court erred in finding appellant's decision to be 'unlawful' because there is substantial evidence to show that respondent's *business activities* in Missouri do not come within the minimum standard prescribed by Public Law 86–272 and the State of Missouri is not prohibited from imposing its net income tax upon respondent, and the finding by the trial court to the contrary was unwarranted and against the weight of the evidence." It is appellant's primary contention that "the trial court erred by substituting its judgment on the evidence for that of appellant's and that this error was not cured simply because the court found appellant's decision to be 'unlawful'."

As stated, we are not here concerned with "evidence," since the *facts* are agreed to be as found by the appellant, hence only a question of law is presented; however, appellant argues its position as follows: " * * * respondent has 12 'detailmen' who travel throughout Missouri not only with promotional and advertising materials which they give to respondent's customers—the retail druggists—to induce interstate sales, but also with brochures, pamphlets, daily reminder calendars and *drug samples* which they give to doctors. * * * these 'detailmen' specifically ask doctors to prescribe respondent's drugs for their patients so that the patient will then have to purchase these drugs at retail. Respondent is clearly engaged in the domestic business of 'inducing' the intrastate activity of prescription writing and the intrastate activity of local drug purchases. The distribution of drug samples alone destroys respondent's argument that they are engaged solely in interstate commerce. * * * Surely respondent wants the doctors to give these samples to their patients to see whether the drugs have the pharmaceutical value respondent claims them to have. * * * Its 'detailmen' are Missouri residents. * * * It was admitted by respondent that its 12 'detailmen' are given an assigned territory in Missouri and they regularly, systematically and continuously solicit druggists and 'detail' doctors within that territory."

Appellant concludes its argument as follows: " * * * the trial court erred by finding that respondent's business activities in Missouri came within the minimum standard of Public Law 86–272. Such a finding

is clearly against the weight of the evidence. Respondent performs intrastate business in Missouri by regularly, systematically and continuously 'inducing' local prescription writing and retail sales. Other factors, such as the distribution of drug samples, the authorization to do business in Missouri and the employment of Missouri residents to operate out of their homes, drive respondent's cars and periodically hold sales meetings, also lead to the conclusion that respondent is engaged in local business. Notwithstanding this intrastate business, respondent has a sufficient connection or nexus with the State of Missouri so as to be required to pay a nondiscriminatory income tax reasonably apportioned to respondent's local activities in Missouri. The income tax assessments herein fall within this description. Respondent should not be allowed to exploit the Missouri consumer market and earn a profit without paying its fair share of the cost which Missouri bears in maintaining this market."

Appellant admits that "No court cases or legal authorities have been found by this writer which can be of any substantial aid in deciding what Public Law 86–272 actually means and whether respondent's activities in Missouri come within the statutory minimum standard or not. About the most that can be said in describing this statute is that it was hastily enacted, not very clear, and is considerably restricted in its scope, see note, 75 Harv.L.R. 953, 1007–1010. It was not enacted as a permanent piece of legislation but only as a temporary solution while further studies by Congress could be made, U.S.Code, Cong. & Ad. News, 86th Congress, Volume II, p. 2551."

In support of appellant's contention that respondent was engaged in intrastate commerce in Missouri, appellant cites Eli Lilly & Co., v. Sav-On-Drugs, Inc., *366 U.S. 276, 279–284, 81 S.Ct. 1316, 1319, 6 L.Ed.2d 288*, where the evidence showed many facts quite similar to the facts here, but the Court found from other undisputed evidence that: "Plaintiff maintains an office at 60 Park Place, Newark, New Jersey. Its name is on the door and on the tenant registry in the lobby of the building. (The September 1959 issue of the Newark Telephone Directory lists the plaintiff, both in the regular section and in the classified section under 'Pharmaceutical Products,' as having an office at 60 Park Place, Newark.) The lessor of the space is plaintiff's employee, Leonard L. Audino, who is district manager in charge of its marketing division for the district known as Newark. Plaintiff is not a party to the lease, but it reimburses Audino 'for all expenses incidental to the maintenance and operation of said office.' There is a secretary in the office, who is paid directly by the plaintiff on a salary basis." The Court held that the "record clearly shows that Lilly was, as a matter of fact, engaged in local intrastate business in New Jersey through the employees it kept there to induce retailers, physicians and hospitals to buy Lilly's products from *New Jersey wholesalers* in intrastate commerce." (Italics ours.) The case is not controlling under the facts before us.

The essence of this assignment, as we view it, is that whether or not Public Law 86–272 is constitutional or unconstitutional "respondent's business activities in Missouri do not come within the minimum standard prescribed" by the Federal act. No question of the weight of the evidence is involved. Only a question of law is presented. We find nothing in the facts found by the State Tax Commission to indicate any business or financial transactions took place when the representatives "detailed" the doctors, or when they distributed free samples, or when they gave out literature, or when the representatives met together, these were not business transactions where finances were involved or taxable income produced or any intrastate commerce involved. The only financial transactions were between respondent and the druggists or the hospitals that order drugs, and that is in interstate commerce.

■ Our conclusion is that the admitted facts before us fail to show that respondent was engaged in *intrastate commerce* or that respondent's activities in Missouri equaled or exceeded the minimum standard set by Public Law 86–272.

Appellant further contends that "the trial court erred in finding that respondent was not doing business in Missouri during the years concerned, was not licensed to do business in Missouri except during the period July 23, 1959 to December 31, 1959, and was therefore not subject to the Missouri income tax law except during the period of registration *because respondent failed to exhaust its administrative remedies on this issue when it raised it for the first time on appeal and did not submit the question to appellant for its determination,* and further *because such a finding has no basis upon the evidence in this case."* (Italics ours.)

■■ We find no merit in this assignment. Respondent did not fail to exhaust its administrative remedies or fail to submit the issue of not engaging in intrastate commerce in Missouri to the State Tax Commission. Although it is true that at the close of the hearing before the State Tax Commission respondent's position was stated as being based "entirely on the Federal statute," nevertheless that defense included the question of whether respondent was doing an intrastate business in Missouri during the years concerned. Further, in respondent's appeal from the adverse rulings of the Missouri Director of Revenue with reference to the approval of these assessments of Missouri income tax, the respondent assigned as a ground for reversal the alleged fact that "the activities of CIBA Pharmaceutical Products, Inc., in the State of Missouri are exclusively interstate commerce and are confined entirely to solicitation." It, therefore, appears that the defense or claim of tax immunity under P.L. 86–272 included the matter of "not doing business in Missouri." This defense was fully covered by respondent's contention

that its business activities were interstate and within the minimum standards of Public Law 86–272. The evidence offered by respondent before the State Tax Commission at the administrative hearing on February 7, 1962 was certainly offered in support of the specific allegations stated in respondent's written appeal from the rulings of the Missouri Director of Revenue to the State Tax Commission and, as stated, were clearly included within the defense based upon the Federal statute. We further find no merit in appellant's contention that the trial court's finding upon review *had absolutely no foundation or support by evidence in the case.* The trial court's ruling was a conclusion of law based upon the facts as found by the State Tax Commission from the testimony heard on February 7, 1962. The trial court's judgment was, therefore, not outside the issues before it and the issues decided were fully supported by the facts found by the State Tax Commission from the evidence presented before it.

■ Appellant also argues that the income tax assessments involved in this appeal were made on February 2, 1961 and, since at that time the respondent was authorized to do business in Missouri, the judgment properly and correctly declared that respondent was subject to the Missouri income tax law regardless of whether it did any business in this state under said authority or had done business in the state at any time prior to being authorized to do business in this state. We do not agree, but rather hold that § 143.040 RSMo 1959 did not authorize the imposition of an income tax levy upon a foreign corporation subsequently authorized to do business in this state, if, as appears from the facts found, it had not been doing business in this state prior to the granting of such authority. Appellant's further contention that "respondent offered no evidence whatsoever at the administrative hearing to show [that] it was *not* doing business in Missouri" is not supported by the facts found by the State Tax Commission itself from respondent's evidence.

We must and do hold that respondent has not waived or abandoned any of its administrative remedies; that it is not barred from presenting its contention that it was not doing an intrastate business in Missouri during the mentioned years; and that this issue was in fact ruled against respondent by the State Tax Commission in its "Conclusions of Law."

Appellant also contends that regardless of whether respondent was engaged in intrastate commerce respondent had a sufficient connection or nexus with the State of Missouri *to sustain a nondiscriminatory income tax reasonably apportioned to respondent's local activities in Missouri;* that the income tax assessments in question fall *within that* description; and that respondent should not be allowed to exploint the Missouri consumer market and earn a profit without paying its fair share of the cost which Missouri bears in maintaining this market.

We need not rule the issue presented in view of the conclusions we have reached on subsequent assignments of error.

Appellant's final assignment in the brief, filed while the cause was pending in Division No. 2, is that "the trial court erred in failing to find Public Law 86–272 * * * unconstitutional because said Public Law violates Article III, Section I, and the 10th Amendment of the United States Constitution." Appellant also contended that "Public Law 86–272 should not be classified as a 'remedial statute' and should not be given a liberal construction."

In appellant's supplementary brief filed after the cause was transferred to Court en Banc appellant states:

"This case involves constitutional considerations which have never been the subject of adjudication. Congress has never before enacted a statute which re-defines or overrules judicial pronouncements defining 'due process of law' or what constitutes 'regulation of interstate commerce.' Appellant's constitutional objections to Public Law 86–272 are not concerned with the relative roles to be played by state or federal governments, but with fear that the prohibitory nature of Public Law 86–272 can abolish the federal system and state governments altogether." The points presented are, as follows:

"1. The imposition of a net income tax on income derived from sources within a state does not constitute a regulation of interstate commerce and therefore Congress is without power to forbid it. 2. Public Law 86–272 is an unconstitutional legislative effort to overrule the decisions of the Supreme Court of the United States which prescribe due process of law limitations on a state's power to tax net income from sources and activities within its jurisdiction. 3. Public Law 86–272 is patently discriminatory against that portion of the business community that is not protected by its restrictive provisions, because it employs distinctions without substance which result in unconstitutional classifications for due process purposes."

In the consideration of the above assignments we have been favored with amici curiae briefs on behalf of the State of Michigan, the Commonwealth of Pennsylvania and the State of Oregon, all of which seek to support the position taken by appellant.

Is Congress without power to prohibit a state from imposing a net income tax on income derived from sources within the state by a foreign corporation engaged in interstate commerce? Does such taxation constitute a "regulation" of interstate commerce?

In Northwestern States Portland Cement Co. v. Minnesota, and Williams v. Stockham Valves & Fittings, Inc., cases considered together by the United States Supreme Court, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, the Court pointed out that thirty-five states, including Minnesota and Georgia, imposed direct income taxes on foreign corporations engaged in interstate commerce. The taxpayers in the mentioned cases contended that the Minnesota and Georgia stat-

utes violated both the "Due Process" and "Commerce Clauses" of the United States Constitution. The Court held: "We conclude that net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same. * * * Appellant's activities in Minnesota consisted of a regular and systematic course of solicitation of orders for the sale of its products, each order being subject to acceptance, filling and delivery by it from its plant at Mason City [Iowa]. * * * In addition to the solicitation of approved dealers, appellant's salesmen also contacted potential customers and users of cement products, such as builders, contractors, architects, and state, as well as local government purchasing agents. Orders were solicited and received from them, on special forms furnished by appellant, directed to an approved local dealer who in turn would fill them by placing a like order with appellant."

In the Stockham case the taxpayer's salesmen "carried on the usual sales activities, including regular solicitation, receipt and forwarding of orders to the Birmingham office and the promotion of business and good will. * * * Orders were taken * * * subject to approval of the home office and were shipped from Birmingham direct to the customer on an 'f. o. b. warehouse' basis."

As to the income tax levied by the states, the Court said: "The taxes are not regulations in any sense of that term. Admittedly they do not discriminate against nor subject either corporation to an undue burden. While it is true that a State may not erect a wall around its borders preventing commerce an entry, it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the State. * * * The record is without con-

flict that both corporations engage in substantial income-producing activity in the taxing States." The right of a state to levy an income tax under the facts shown was affirmed.

The above cases were decided February 24, 1959, and subsequent thereto the United States Supreme Court denied certiorari in two cases from Louisiana (International Shoe Co. v. Fontenot, 236 La. 279, 107 So.2d 640, cert. denied, 359 U.S. 984, 79 S.Ct. 943, 3 L.Ed.2d 933; Brown-Forman Distillers Corp. v. Collector of Revenue, 234 La. 651, 101 So.2d 70, cert. denied, 359 U.S. 28, 79 S.Ct. 602, 3 L.Ed.2d 625) which cases affirmed the imposition of state income taxes on the two foreign corporations under facts somewhat similar to the facts stated above. Thereafter, Congress passed Public Law 86–272. Appellant contends that this type of legislation is totally unprecedented; that it is the first exercise of congressional power to limit state taxation; and that the act is unconstitutional.

Appellant, of course, relies on the statement that the net income taxes levied by Minnesota and Georgia "are not regulations in any sense of that term," and contends that Congress has no power to forbid a state to levy such a tax. Appellant argues that a net income tax is imposed upon an abstract concept of "net income," and that it is not directly related to any particular activity and it is not material whether the income arose from activity wholly in interstate commerce. See Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090. Appellant further contends that the legislature of any state in attempting to put upon business its fair share of the burden of income taxation was faced with the impossibility of allocating specifically the profits earned by the processes conducted within the borders of the state. See Bass, Ratcliff and Gretton v. State Tax Commission, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282.

Appellant says "that, in enacting Public Law 86–272, Congress failed to recognize

the lack of any fundamental relationship of a net income tax to specific commercial activities from which net income is derived, and therefore erroneously assumed that the restrictive doing-business features of Public Law 86–272 constitute regulation of interstate commerce," hence the act is unconstitutional in that it does not constitute a regulation of interstate commerce and Congress was without authority to adopt it.

The Minnesota and Stockham cases conform to the proposition that it was not the purpose of the "Commerce Clause" to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business; and that even interstate business must pay its way. Many cases supporting the mentioned proposition, including the Minnesota and Stockham cases, are cited in the recent case of General Motors Corporation v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430, decided June 8, 1964.

In the General Motors case, supra, 84 S.Ct. 1564, the Court held that local taxes measured by gross receipts from interstate commerce are constitutionally proper if they are fairly apportioned; that the validity of the tax rests upon whether the state is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation; that, in determining whether local taxes measured by gross receipts from interstate commerce impose an improper burden upon interstate commerce, the question is whether the state has exerted its power in proper proportion to the taxpayer's activities within the state and to the taxpayer's consequent enjoyment of opportunities and protections which the state has afforded; that a taxpayer claiming immunity from a tax has the burden of establishing his exemption and this burden is not met by showing a fair difference of opinion which as an original matter might be decided differently; and that a state is not precluded from imposing taxes upon other activities or aspects of interstate business which, unlike the privilege of doing interstate business, are subject to sovereign power of state.

◼ The Commerce Clause of the Federal Constitution, Art. I, § 8, Clause 3, provides that: "The Congress shall have power: * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes * *" In view of this grant of power the state's power to act in the field of interstate commerce is to some extent limited and controlled by the presence or absence of Congressional action in the particular field. See H. P. Hood & Sons v. DuMond, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865. Another case to the same effect is United States v. Darby, 312 U.S. 100, 119, 61 S.Ct. 451, 459, 85 L.Ed. 609, where the Court said that, "In the absence of Congressional legislation on the subject state laws which are not regulations of the commerce itself or its instrumentalities are not forbidden even though they affect interstate commerce." Also, see Minnesota and Stockham cases, 358 U.S. 450, 457, 79 S.Ct. 357, 362, where the Court referred to the fact that "Commerce between the States having grown up like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it * * *."

Respondent concedes that Public Law 86–272 does not prohibit the imposition of a state income tax under a factual situation where the taxpayer's activities go beyond the minimum standards prescribed in the act, wherein Congress has in effect declared that certain minimum activities in interstate commerce are not sufficient to justify taxation of such commerce between the states and it is only where the activities in the taxing state exceed the minimum that a net income tax may be levied. Other cases such as International Shoe Co. v. Washington, 326 U.S. 310, 315, 66 S.Ct. 154, 158, 90 L.Ed. 95, indicate that Congress in the exercise of the power to regulate commerce "may authorize the states, in specified ways, to regulate interstate commerce or impose burdens upon it."

The United States Supreme Court has refused to pass upon the wisdom of Congressional action in regulating commerce and in United States v. Darby, supra, 312 U.S. 100, 115, 61 S.Ct. 451, 457, the Court said: "The motive and purpose of a regulation of interstate commerce are matters for the legislative judgment upon the exercise of which the Constitution places no restriction and over which the courts are given no control." In adopting Public Law 86–272 Congress is clearly, in our opinion, undertaking to regulate interstate commerce by providing a uniform statement of the facts, circumstances and conditions under which a state may not burden interstate commerce by state income taxes where the activities of the corporation in a foreign state do not exceed the minimum standard set up in the act.

The mentioned act is in our view a regulation which Congress was authorized to make. It was intended to protect foreign corporations engaged in interstate commerce from state income taxes which Congress believed to be an excessive and unreasonable burden on interstate commerce. Respondent distributes its products into all of the fifty states and every state that seeks to levy an income tax on any such foreign corporation doing interstate commerce within its boundaries necessarily imposes an income tax under a different statute. The determination of the amount of the tax due each state and whether the amount bears a proper relationship to the particular activities carried on in each of the taxing states would alone impose a heavy burden, hindering and limiting interstate commerce.

■ We do not find that the act overrules any U. S. Court decisions, since Congress and the Courts operate in different fields. Nor do we find any merit in the contention that the act is unconstitutional because "patently discriminatory against local business." Intrastate business is controlled by the State, interstate commerce is controlled and regulated by Congress. The authority to act in the respective cases emanates from different sources. Nor do we find that the act employs distinctions without substance which result in unconstitutional classifications, nor that the act is unconstitutional on any of the grounds presented.

Since the filing of the briefs in this case and its submission here, the Supreme Court of Louisiana, in a well considered opinion with which we agree, has found the Federal act to be constitutional, hence that the State was without authority to levy an income tax on the profits arising from interstate commerce transactions under the facts shown. International Shoe Co. v. Cocreham, 246 La. 244, 164 So.2d 314.

The judgment of the circuit court is affirmed.

All concur.