**OKLAHOMA TAX COMMISSION,**
Plaintiff in Error,

v.

**BROWN–FORMAN DISTILLERS CORPO-RATION, a Delaware Corpora-tion, Defendant in Error.**

**OKLAHOMA TAX COMMISSION,**
Plaintiff in Error,

v.

**JACK DANIEL DISTILLERY, Lem Motlow, Prop., Inc., a Tennessee Corpora-tion, Defendant in Error.**

Nos. 41746, 41747.

Supreme Court of Oklahoma.

Oct. 25, 1966.

As Corrected Nov. 9, 1966.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for plaintiff in error.

Bruce H. Johnson, Wm. J. Holloway, Jr., and L. E. Stringer, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for defendant in error.

HALLEY, Chief Justice:

These are actions for the recovery of Oklahoma income tax paid under protest. Defendants in error here, Brown-Forman Distillers Corporation and Jack Daniel Distillery, Lem Motlow, Prop., Inc., paid such taxes under protest and brought these actions for refund against the Oklahoma Tax Commission, plaintiff in error, here. The parties will be referred to here by their trial court designation. Judgment was for plaintiff in both actions below. These appeals, brought by the Oklahoma Tax Commission, defendant below, were consolidated for briefing and decision by our order of November 23, 1965.

The pleadings in both cases were substantially the same. Both petitions alleged the defendants assessment against them for the fiscal years 1960, 1961, and 1962. They alleged payment of all taxes due under protest, and the timely bringing of these actions for their recovery. By amendment to its petition, plaintiff Brown-Forman limited its refund action to the fiscal year ending April 30, 1962. Both petitions alleged that such taxes are not payable by reason of the Commerce Clause of the Federal Constitution and the restriction of the Interstate Income Law. Both plaintiffs allege that they are in the business of distilling, blending and distributing whiskey at wholesale.

The defendant Tax Commission, by its answer asserts that plaintiffs' activities in Oklahoma are not within the protection of the Interstate Commerce Clause of the Federal Constitution by reason of Article 21,

Section 2 of the Constitution, and that by virtue of plaintiffs' activities in becoming domesticated in Oklahoma, the solicitation of business, the appointment of a service agent and advertising in Oklahoma, that this constitutes the doing of business in Oklahoma, so as to render both plaintiffs subject to the income tax laws of Oklahoma.

The records in the trial court were largely by stipulation, and were identical, insofar as facts material to this matter are concerned. The stipulations showed that both plaintiffs were foreign corporations, plaintiff Brown-Forman being a Delaware corporation, with its principal place of business being in Louisville, Kentucky. Plaintiff Jack Daniel is a Tennessee corporation, with its principal place of business in Lynchburg, Tennessee. Their method of operating in Oklahoma was the same. Each had in Oklahoma, during the time material hereto, one salaried employee who made calls on wholesale beverage distributors and solicited orders from them. The employee furnished his own car and was reimbursed for its use. Orders taken were forwarded by the employee to the home office, for acceptance or rejection. If accepted, the orders were filled by shipment F.O.B. from the home office, or from other locations outside Oklahoma. In some instances, the Oklahoma distributor furnished the transportation for the orders from a point outside Oklahoma. During the time involved here, neither plaintiff owned, leased or operated an office in Oklahoma. Accounts arising out of Oklahoma sales were payable at the home office of each plaintiff. Collection, adjustment and handling of all accounts were all done from the home office.

During the time material hereto, arrangements for newspaper, trade paper and billboard advertising were carried out by a separate independent advertising agency, a foreign corporation, not domesticated in Oklahoma. All decisions pertaining to advertising were made in the home offices of the plaintiffs. Neither plaintiff owned a stock of goods in Oklahoma, neither did either of them own any property, real, personal or mixed in Oklahoma.

By affidavit, both plaintiffs showed that they had domesticated in Oklahoma and appointed a service agent in order to comply with the provisions of the Oklahoma Alcoholic Control Act, 37 O.S.1961, § 501 et seq., in obtaining a nonresident seller's license under the Act.

Both plaintiffs, while denying that any tax was due and payable, stipulated as to the amount of the tax, if their contentions were not sustained.

The trial court, in holding in favor of the plaintiffs, bottomed its decision on the provisions of the Interstate Income Law, (P.L. 86–272), applied it to the facts here, and rendered judgment in favor of the plaintiffs.

Defendant, below and in its Petition in Error, questioned the constitutionality of the Act above, but did not brief this issue here, and we therefore take it that it has abandoned this proposition.

Defendant does contend most earnestly, that the plaintiffs were "doing business" in Oklahoma so as to be amenable to the assessment of an income tax on the net income derived from the sales of their products in Oklahoma under an apportionment formula. Defendant denies that the Commerce Clause of the Constitution has any bearing on the controversy, but asserts that it is controlled by the 21st Amendment to the Constitution of the United States and by the provisions of the Oklahoma Alcoholic Beverage Control Act, 37 O.S.1961, § 501, et seq. It also asserts that the provisions of P.L. 86–272 are not applicable herein because the plaintiffs were, in their activities in Oklahoma, beyond the minimal activities provided for in that Act.

Plaintiffs, on the other hand, just as earnestly contend for their position, namely that the provisions of P.L. 86–272 do apply to their situation, and that such a tax would constitute an unfair burden on interstate commerce, bringing into play the provisions of the Commerce Clause of the Federal Constitution.

With the issues thus drawn, it is necessary to consider the provisions of the statutes and Constitution in question.

From the historical standpoint, it can be said that in February of 1959, the Supreme Court of the United States rendered its judgment in the consolidated cases of Northwestern States Portland Cement Company v. Minnesota and Williams v. Stockham Valves and Fittings, Inc., 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292. This decision upheld the contentions of the states of Minnesota and Georgia that a nondiscriminatory properly apportioned net income tax could be levied and collected from foreign corporations not authorized to do business in the taxing states whose activities in the taxing states were purely of an interstate character. The ruling was based upon a determination that the net income from the operations of the corporations within the taxing states provided a sufficient connection or "nexus" with Minnesota and Georgia for taxing purposes. In the cases above mentioned, each corporation maintained an office in the taxing state from which its salesmen solicited orders from local customers, which orders were transmitted for acceptance or rejection outside the state, and where accepted, were fulfilled by the shipment of tangible goods into the states through the channels of interstate commerce. At this time, early in 1959, some 35 states had enacted various income tax statutes that applied to the facts in the Minnesota and Georgia cases, above mentioned.

Shortly after the decisions above were promulgated, the Congress of the United States enacted Public Law 86–272, sometimes referred to as the Interstate Income Law, 15 U.S.C. §§ 381–384. The pertinent section of that statute, Section 381, provides as follows:

Sec. 381. Imposition of net income tax— Minimum standards

"(a). No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either or both of the following:

'(1) the solicitation of orders by such person or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and if approved, are filled by shipment or delivery from a point outside the State; * * *.'"

The above act has been upheld against challenges as to its constitutionality. See International Shoe Co. v. Cocreham, 246 La. 244, 164 So.2d 314 (1964) certiorari denied.

Defendant contends that if the commodity here involved was something other than intoxicating liquors, that there would be no question but that P.L. 86–272 would be applicable, but that by virtue of the 21st Amendment to the Constitution, each state, and particularly Oklahoma in this instance, may choose not to treat intoxicating liquors as ordinary articles of commerce, and that Oklahoma made this choice by the enactment of the Oklahoma Alcoholic Beverage Control Act, 37 O.S.1961, § 501 et seq.

Defendant cites, in support of the above contention, language from the case of Department of Revenue v. James B. Beam Distill. Co., 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362, and from the case of United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 665, 89 L.Ed. 951.

In this respect, defendant's position is considerably weakened, however, by the decision of the Supreme Court of the United States in the case of Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350, wherein that court stated:

"To draw a conclusion from this line of decisions that the Twenty-First Amendment has somehow operated to 'repeal' the Commerce Clause wherever regulation of intoxicating liquor is concerned would, however be an absurd oversimpli-

fication. If the Commerce Clause had been *pro tanto* 'repealed', then Congress would be left with no regulatory power over interstate or foreign commerce in intoxicating liquor. Such a conclusion would be patently bizarre and is demonstrably incorrect."

At this point it is well to point out that in accord with the stipulations upon which the case at hand was tried, it is clearly shown that neither plaintiff is importing or transporting liquor of any kind into Oklahoma. Each has delivered its products either to persons holding wholesaler's licenses to import intoxicating liquors into Oklahoma or had delivered them to carriers for such wholesalers, all at points outside Oklahoma.

The Commerce Clause was directly involved in the Hostetter case, supra. The Idlewild Liquor Corporation was selling bottled wines and liquors to departing international air travelers. Its method of doing business was unlicensed and unlicensable under the New York Beverage Control Law. The State Authority asserted to Idlewild that its business was illegal under the New York law. Idlewild brought an action for injunctive relief against the State Agency under the Commerce Clause and on other grounds. The District Court held that the Commerce Clause rendered invalid the state assertion of authority and granted relief under the Commerce Clause. Upon the reasoning stated above, the Supreme Court affirmed the judgment for Idlewild.

To us, this is a clear demonstration of the unsoundness of the position taken herein by the defendant, and we therefore must hold that this controversy is governed by the Federal Statute, (P.L. 86–272). The business activity of plaintiffs in Oklahoma was clearly confined to the area protected by the statute. Plaintiffs were engaged solely in the solicitation of orders, filled on approval from outside the state. They each had their single representative to solicit orders. They owned no property in Oklahoma. Their sales were completed F.O.B. Louisville or Lynchburg.

Their collections were handled from such offices. See State ex rel. CIBA Pharmaceutical Products, Inc. v. State Tax Commission, 382 S.W.2d 645, Mo.1964.

The defendant's reliance upon the 21st Amendment is misplaced. No alcoholic beverage regulation is involved here. The general income tax assessments in question are not within the compass of the 21st Amendment. The trial court properly held that the Interstate Income Law was not avoided in its application by the 21st Amendment.

In view of our opinion that this matter is governed by the provisions of the Interstate Income Law, we deem it unnecessary to discuss here the other points relied upon by the defendants.

Affirmed.