386 A.2d 471

**UNITED STATES TOBACCO COMPANY, Appellant,**

v.

**COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Oct. 14, 1976.

Decided March 23, 1978.

126

Rhoads, Sinon & Reader, Frank A. Sinon, Robert L. Weldon, Sherill T. Moyer, Harrisburg, for appellant.

Eugene J. Anastasio, Vincent J. Dopko, Deputy Attys. Gen., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

This case presents the important question of whether Pennsylvania's Corporation Income Tax can be validly ap-

plied to a foreign corporation which is engaged solely in interstate commerce but solicits business in this Commonwealth through the use of field representatives.

The relevant facts are not in dispute. Appellant, United States Tobacco Company, is a New Jersey Corporation engaged in the manufacture and sale of tobacco products. Its products are sold exclusively in interstate commerce, in part to Pennsylvania customers. For the time period in question, appellant had no manufacturing plants in Pennsylvania, no warehouses or other structures in which inventory was stored, no offices in this state, maintained no bank accounts nor kept any corporate records, and held no corporate meetings in Pennsylvania.

Appellant's sole contact with Pennsylvania is through ten so-called "missionary representatives." These representatives, furnished with company cars, visit independent wholesalers to inform them of company activities and promotions, and sometime take orders for appellant's products. Orders obtained are sent to Greenwich, Connecticut for approval or rejection, and if approved, are filled by shipment from a point outside Pennsylvania. The representatives do not have the authority to accept an order, have no agency powers whatsoever, and no authority to adjust or settle claims, collect accounts receivable, or otherwise handle any money belonging to or due appellant.

These representatives also visit various retail outlets. On these visits, the representatives carry samples of new products. These samples are purchased from wholesalers in Pennsylvania at the wholesale price. If a retailer agrees to purchase those samples, the retailer pays the representative the same price. Hence, no profit is realized on these incidental sales. Representatives also check the retailer's existing inventory of appellant's tobacco products to determine if the products are fresh and attractively displayed. The representatives set up counter displays and sometimes give the retailers free samples of appellant's products in exchange for more extensive counter space. The representatives maintain daily reports of their activities.

These retailers order their products directly from the independent wholesalers who, in turn, send their own orders to appellant's headquarters outside Pennsylvania.

Appellant's solicitation activities were previously the subject of litigation in this Commonwealth, and it was determined that its activities did not create a constitutional taxable nexus, *Commonwealth v. United States Tobacco Co.*, 70 Dauph. 217 (1957). The matter at that time did not reach this Court.

Pursuant to Article V of the Tax Reform Code of 1971, *as amended*, 72 P.S. §§ 7501–7506 (Supp.1977–78), which imposes on corporations "carrying on activities" in Pennsylvania a tax based on taxable income derived from sources in the Commonwealth, the Commonwealth settled appellant's Corporation Income Tax for the year 1971 in the amount of $70,878.52. On August 13, 1974, the Resettlement Board denied appellant's petition for resettlement. The Board of Finance and Review subsequently sustained the settlement, as did the Commonwealth Court. *United States Tobacco Co. v. Commonwealth*, 22 Pa.Cmwlth. 211, 348 A.2d 755 (1975). Appellant then exercised its right of appeal to this Court. *See* The Appellate Court Jurisdiction Act of 1970, § 203, 17 P.S. § 211.203 (Supp.1977–78).

Throughout this entire litigation appellant has presented three issues for resolution. Appellant claims (1) that imposing Pennsylvania's Corporation Income Tax against appellant, a foreign corporation engaged solely in the solicitation of orders for sale in interstate commerce, violates federal statutory law exempting such activity from this kind of state taxation; (2) that because of appellant's minimal contacts with Pennsylvania, Pennsylvania's Corporation Income Tax is unconstitutional as applied to appellant; and (3) that if appellant is subject to this state tax, Pennsylvania's "add back" of corporation income tax, after apportioning appellant's income to Pennsylvania activities to determine appellant's ultimate tax liability, is void for want of statutory authority, or alternatively, is unconstitutional because it

taxes more of appellant's income than Pennsylvania can legally reach.

We agree with appellant that federal statutory law exempts it from Pennsylvania's Corporation Income Tax, and reverse the order of the Commonwealth Court directing appellant to pay the tax. We therefore need not address appellant's constitutional arguments, nor do we address the issues relating to the computation (add back) of appellant's ultimate tax liability. Our holding that Congress intended to exempt appellant from this Pennsylvania tax cannot be understood without setting forth some historical background.

■■ A state can constitutionally tax a corporation that engages solely in interstate commerce, whether the tax be called a "net income" tax, a tax on a corporation's "going concern value," or a tax on the privilege of engaging in business within a particular state. *See Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). The Commerce Clause, however, by its own force, places some limitation on a state's power to exact taxes from interstate concerns. A tax will be held valid only if the state exacts a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. *E. g., Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975). State taxes which affect interstate commerce must also be consonant with constitutional concepts of due process. A nexus must exist between the tax and activities within the state for which the tax is exacted, and "the [controlling] question is whether the state has given anything for which it can ask return." *Standard Steel Co. v. Washington Dep't of Revenue,* 419 U.S. 560, 562, 95 S.Ct. 706, 708, 42 L.Ed.2d 719, 722 (1975), *citing Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267, 270–71 (1940).

United States Supreme Court decisions delineating the extent of a state's power to tax interstate commerce reflect a judicial balancing between the interests of the several states in deriving revenue from activities in interstate com-

merce and the burdens imposed upon the interstate corporation by pursuit of that interest. Increasingly in recent years, the balance has been struck in favor of the states: if a particular tax is fairly apportioned and does not discriminate against interstate commerce, the Supreme Court has permitted states to "pursue [their] own fiscal policies, unembarrassed by the Constitution." *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267, 270 (1940).

When a foreign corporation's contacts within the state fall below a certain minimal level, however, a state may not constitutionally exact a tax on those activities. As early as 1887, the Supreme Court held that an out-of-state business could send employees ("drummers") into another state to solicit sales, and if no other activities were involved, no taxable nexus was established. *Robbins v. Shelby County Taxing Dist.*, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887). In *Norton Co. v. Illinois Dep't of Revenue*, 340 U.S. 534, 537, 71 S.Ct. 377, 380, 95 L.Ed. 517, 520 (1951), the principle was succinctly stated:

"Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the state of the buyer has no local grip on the seller. Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable."

Eight years after its decision in *Norton*, however, the Supreme Court decided *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), and denied certiorari in *Brown-Forman Distillers Corp. v. Collector of Revenue*, 234 La. 651, 101 So.2d 70 (1958), *cert. denied*, 359 U.S. 28, 79 S.Ct. 602, 3 L.Ed.2d 625 (1959). In *Northwestern States*, the Court upheld a Minnesota tax on the Minnesota income of an Iowa cement manufacturer who maintained a sales office and staff in Minnesota to solicit orders and encourage cement users there to

order Northwestern cement when ordering from local wholesalers. In *Brown-Forman*, a decision which the Supreme Court refused to disturb, the Louisiana Supreme Court upheld a similar tax on a Kentucky corporation whose Louisiana activities were limited to the presence of "missionary men" who solicited Kentucky wholesalers and sometimes assisted those wholesalers in obtaining suitable displays of the products in the various retail establishments. These decisions prompted "serious apprehension in the commercial community" that activity in another state limited to soliciting business would subject interstate concerns to multiple state taxation. *See* S.Rep.No. 658, 86th Cong., 1st Sess., at 2 (1959); HR Rep. No. 936, 86th Cong., 1st Sess., at 1 (1959); 1959 U.S.Code Congressional and Administrative News pp. 2548–61.

■ Congress's response to *Northwestern States* and *Brown-Forman*, and the statute relied on by appellant in this appeal, was Pub.L. 86–272, now codified at 15 U.S.C. §§ 381–384 (1970). By this statute, Congress sought to allay the fear that "mere solicitation" would subject interstate businesses to multiple state taxation. *See Heublein v. South Carolina Tax Comm'n*, 409 U.S. 275, 280, 93 S.Ct. 483, 34 L.Ed.2d 472, 479 (1972). The relevant portion of the statute is § 381(a), entitled "Imposition of Net Income Tax," which provides:

"Minimum standards

No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)." (Emphasis added.)

Section 381 defines the lower limit of a state's taxing power. If a foreign corporation presumptively covered by the Act engages solely in the solicitation of orders, either by soliciting orders for the direct benefit of the foreign corporation (§ 381(a)(1)) or by soliciting orders which benefit an independent customer, wholesaler, or distributor (§ 381(a)(2)), or both, a state may not impose on that out-of-state business any tax based on or measured by net income. 15 U.S.C. § 383 (1970). If the interstate corporation is involved in something more than solicitation, a state may validly tax that portion of the corporation's taxable income attributable to activity within the state. It is undisputed that appellant meets all the other statutory criteria for tax exempt status; thus our decision turns on whether appellant's activities in Pennsylvania are solicitation or something more than solicitation.

This Court has never had occasion to construe § 381, and the United States Supreme Court's only opinion addressed to the statute is uninstructive on the proper interpretation of "solicitation" as it appears in the Act. *See Heublein v. South Carolina Tax Comm'n,* 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972). In *Heublein,* the taxpayer was required to maintain a local representative in the taxing state in order to comply with state liquor regulations. This representative's functions included contacting local retailers to inform them of new company products. South Carolina law, however, required that shipments of liquor into the state be sent to this representative, who then transferred the shipments to a local wholesaler. The Court did not have to reach the issue of whether the representative's sales activities were limited to solicitation. In its view, the shipment of

liquor to the representative, and subsequent transfer to a local wholesaler, "was neither 'solicitation' nor the filling of orders 'by shipment or delivery from a point outside the State' within the meaning of § 381." 409 U.S. at 278–79, 93 S.Ct. at 486, 34 L.Ed.2d at 477.

Opinions from sister states, although by no means uniform in their construction, are helpful in determining whether Congress sought to insulate from state income taxes the type of activity engaged in by appellant. In the most recent state court decision to consider § 381, a New York appellate court, on facts similar to the case before us, held that the foreign corporation was exempt from a New York tax measured by income attributable to New York sales. *Gillette Co. v. State Tax Comm'n,* 56 A.D.2d 475, 393 N.Y.S.2d 186 (1977) (appeal pending, N.Y.Ct.Appeals). Gillette had no place of business in New York, did no manufacturing there, had no inventory in New York save for samples carried by its salesmen, and filled all orders from outside the state. Like appellant here, Gillette sold its products to a wholesaler who in turn sold its products to retail chains. The activity which the Tax Commission argued went beyond solicitation involved the interaction between Gillette's representatives and these retailers:

> "[T]he salesman tells the retailer of changes in products and of new promotions in the hope the retailer will order the new or promoted item from the . . . wholesaler. The salesman also reviews the retailer's display of Gillette products to insure they are attractively arranged and in saleable condition. It is this last activity which the respondent commission focuses on as more than solicitation, characterizing it rather than 'merchandising'."

*Id.* at 478, 393 N.Y.S.2d at 188.

The tax commission argued, in short, that advising retailers on display techniques, in order to make the product more attractive to the ultimate consumer, was actually a post-sale activity and hence was not solicitation.

The court reviewed the legislative history of § 381, the precise statutory language, and the various state court deci-

sions which have construed the federal law, including the Commonwealth Court's opinion in the instant case. Finding the rationale offered by the Pennsylvania Commonwealth Court to be "unconvincing," *id.* at 480, 393 N.Y.S.2d at 190, the court rejected the tax commission's argument that Gillette was doing more than solicitation as envisioned by § 381:

> "[A]lthough it is not possible to state a general rule demarcating solicitation from merchandising, certainly where, as here, the complaining taxpayer owns no real or personal property (except salesmen's samples) in the State and makes no repairs on its goods after sale, the purpose of P.L. 86–272 would be frustrated by permitting the tax. Advice to retailers on the act of displaying goods to the public can hardly be more thoroughly solicitation, i. e., in this context, an effort to induce purchase of Gillette products. Making the evanescent distinctions which would be necessary to justify the imposition of the tax upon petitioner herein would, if indulged in by the several states, tend to 'Balkanize the American economy', a result which it was Congress's purpose to prevent."

*Id.* at 482, 393 N.Y.S.2d at 191.

*Accord, State ex rel. CIBA Pharmaceutical Products, Inc. v. State Tax Comm'n,* 382 S.W.2d 645 (Mo.1964) (granting § 381 immunity from state tax where seller's representatives visit prospective customers, explain seller's products, and leave literature and samples of seller's product, all in an effort to persuade doctors to write prescriptions for seller's products); *Coors Porcelain Co. v. State,* 183 Colo. 325, 517 P.2d 838 (1973) (granting immunity where seller's representatives, *inter alia,* demonstrated seller's products, negotiated customer prices, and were supplied with company automobiles). *See also International Shoe Co. v. Cocreham,* 246 La. 244, 164 So.2d 314, *cert. denied sub nom. Mouton v. International Shoe Co.,* 379 U.S. 902, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964); *Oklahoma Tax Comm'n v. Brown-Forman Distillery Corp.,* 420 P.2d 894 (Okl.1966).

Illustrative of cases denying § 381 immunity is *Clairol, Inc. v. Kingsley,* 109 N.J.Super. 22, 262 A.2d 213, *aff'd,* 57 N.J. 199, 270 A.2d 702 (1970), *dismissed for want of a substantial federal question,* 402 U.S. 902, 91 S.Ct. 1337, 28 L.Ed.2d 643 (1971). Clairol's representatives, whose primary function was "to promote the public's purchase and use of its products," made regular visits to retail druggists, reviewing displays, arranging promotions, and suggesting optimum ways to merchandise Clairol's products. Clairol's representatives also carried promotion material, business forms and samples. On occasion, they also took inventory of a store's stock of Clairol's products, suggesting orders based on their findings. Furthermore, Clairol employed technicians in New Jersey to instruct its customers in how to use its products. Without deciding whether, *without the technicians,* Clairol's activities went beyond solicitation, the New Jersey Superior Court concluded that taken as a whole, Clairol's activities went beyond solicitation as defined by § 381. *See also Miles Laboratories, Inc. v. Department of Revenue,* 274 Or. 395, 546 P.2d 1081 (1976) (denying § 381 immunity where salespeople maintained stock to replace damaged merchandise, serviced accounts, and arranged advertising displays); *Hervey v. AMF Beaird, Inc.,* 250 Ark. 147, 464 S.W.2d 557 (1971) (since "solicitation of orders" must be narrowly construed, fact that company's representatives make regular checks of customers' inventories of company's equipment goes beyond solicitation of orders); *Olympia Brewing Co. v. Department of Revenue,* 266 Or. 309, 511 P.2d 837 (1973) (agreeing with Oregon tax court that presence of interstate company's beer kegs in taxing state stripped company of § 381 immunity; expressing no opinion on tax court's determination that regular inspections of supply of seller's beer to check for shortages, and efforts to induce attractive displays of seller's products, were essentially solicitation).

■ Comparing those cases granting § 381 immunity with those denying the same illustrates two principles of primary importance. First, each claimed § 381 exemption from a state income tax must be judged on its individual facts. The

totality of the solicitors' or representatives' activities must be considered, and any nexus with the taxing state that cannot accurately be characterized as "solicitation of orders" is sufficient to remove the protection of § 381: e. g., maintaining personal property in the state *(Olympia Brewing, supra)*, employing technicians instead of salespeople *(Clairol, supra)*, or having representatives collect deposits on merchandise ordered or balances of payment on merchandise delivered. *Herff Jones Co. v. State Tax Comm'n*, 247 Or. 404, 430 P.2d 998 (1967). No such activities were involved in *Gillette, supra*, nor are such activities involved in the instant case. Second, and perhaps more instrumental in the disposition of these cases, is that much depends on the breathing space courts are willing to accord the term "solicitation": The courts of Oregon and Arkansas have expressly given "solicitation" a narrow construction, see *Hervey v. AMF Beaird, Inc.*, 250 Ark. 147, 153–57, 464 S.W.2d 557, 561–62 (1971) (citing cases), whereas the *Gillette* court decided that Congress intended that "solicitation" was not to be construed so that any activity beyond an actual request to buy a product would remove § 381's protection. It is this question—the proper construction of "solicitation"—to which we now turn.

The text of § 381 gives no indication of how narrowly or broadly "solicitation" should be construed when assessing the taxability of any particular set of circumstances. It is not clear whether factors such as the presence of sample goods, furnishing solicitors with automobiles, or supervision over or assistance with displays are activities merely incidental to "solicitation" and hence within the statute, or whether they are distinct activities which, either independently or in conjunction with other activities including solicitation, justify imposition of a tax. *See Developments in the Law—Federal Limitations on State Taxation of Interstate Business*, 75 Harv.L.Rev. 953, 1007–1010 (1962). We do have several aids, however, in addition to the background provided by sister state decisions, to assist us in this task. Of primary importance in the proper construction of "solicitation" is § 381's

legislative history, for we cannot forget that "it is essential that we place the words of a statute in their proper context by resort to the legislative history." *Tidewater Oil Co. v. United States,* 409 U.S. 151, 157, 93 S.Ct. 408, 413, 34 L.Ed.2d 375, 383 (1972).

■ We think it highly significant that the Senate Report in support of § 381 specifically referred to the United States Supreme Court's refusal to review, in *Brown-Forman, supra,* the Louisiana Supreme Court's decision, which, on facts similar to the case at bar, upheld the state's power to tax an interstate corporation. See S.Rep.No. 658, 86th Cong., 1st Sess., at 2; U.S.Code Cong. & Admin.News 1959, p. 2549:

"Persons engaged in interstate commerce are in doubt as to the amount of local activities within a State that will be regarded as forming a sufficient 'nexus', that is, connection, with the State to support the imposition of a tax on net income from interstate operations * * *. [There is] a general apprehension in the business community that sales within a State obtained through the mere solicitation of orders within the State by an out-of-State company having no other activities within the State would subject the out-of-State company to the imposition of an income tax by the State on earnings of the company 'properly apportioned' to the State. This apprehension is apparently strengthened by the decision of the Louisiana Supreme Court in the *Brown-Forman* case, which the U. S. Supreme Court refused to review. There the activities of the corporation within the State were apparently limited to the presence of 'missionary men' engaged in solicitation."

In *Brown-Forman,* the foreign corporation's "missionary men," like appellant's representatives, not only sought to procure initial orders for the company's products, but also were involved in obtaining optimum counter displays for those products. 234 La. at 653, 101 So.2d at 70. When Congress enacts legislation exempting "solicitation" by an interstate corporation from a state's net income tax, and does so in response to a case where the "solicitation" in-

volved activity incidental to the initial contact between seller and prospective buyer, we as state courts are bound to give foreign corporations § 381 immunity even though their representatives engage in activities incidental to the initial contact between buyer and seller. The question is one of degree. The foregoing analysis, however, constrains us to disagree with those courts which have concluded that Congress intended "solicitation" to be narrowly construed. *Cal-Roof Wholesale Co. v. State Tax Comm'n,* 242 Or. 435, 410 P.2d 233 (1967); *Hervey v. AMF Beaird, Inc.,* 250 Ark. 147, 464 S.W.2d 557 (1971) (citing *Cal-Roof*).

Indeed, our own experience with the word solicitation supports our view that Congress saw "solicitation" as involving sundry activities so long as those activities were closely related to the eventual sale of a product. Although this Court has never construed the word "solicitation" in the framework of § 381, we have had occasion to consider the term in other contexts. In *Business Tax Bureau of the School Dist. of Philadelphia v. American Cyanamid Co.,* 426 Pa. 69, 231 A.2d 116 (1967), we discussed solicitation in the context of what constitutes "doing business" for purposes of a general business tax. *See also Shambe v. Delaware & Hudson R.R.,* 288 Pa. 240, 135 A.2d 755 (1927). In those cases, we had to determine what activities would amount to something more than "solicitation" such that the taxpayer would be subject to the tax. We have said that acts of courtesy performed by business solicitors, in order to satisfy or accommodate customers, did not go beyond solicitation; nor was it relevant that the solicitors were provided facilities to carry on their solicitations. *See* 426 Pa. at 76, 231 A.2d at 119, *citing Lutz v. Foster & Kester Co.,* 367 Pa. 125, 129–30, 79 A.2d 222, 224 (1951). The import of these decisions is that "solicitation" does not stop at the moment a prospective customer (or wholesaler) is asked to consider purchasing the seller's goods: other practices incident to the initial contact between buyer and seller, such as advice on making the product attractive to the ultimate consumer, also fall under the rubric "solicitation."

■ We therefore conclude that § 381 exempts appellant from Pennsylvania's corporation income tax. Appellant's only contacts with this state—visiting retail outlets, introducing new products, and advising retailers on making attractive displays of appellant's products—are inextricably related to solicitation. Subsection (2) of § 381(a) envisioned precisely the kind of sales activities engaged in by appellant's representatives: an effort to generate sales at the retail level so that appellant's direct customers (Pennsylvania wholesalers) will order more of appellant's products to be able to satisfy the retailers' needs. We agree with the New York court in *Gillette* that making evanescent distinctions between "solicitation" and "solicitation plus" or "merchandising," when the activities in question were all incident to soliciting business, would defeat the very purpose of § 381. Solicitation cannot mean that a foreign corporation may do no more than send salespeople into another state who leave brochures describing their employer's products, hoping the prospective customer will then take the initiative to contact the employer for a possible sale. A company which sends ten "missionary representatives" into a state to "solicit orders" cannot hope to solicit those orders by having those ten persons call on every consumer to buy its product. All of the activities of appellant's representatives were a kind of solicitation activity—as much so as the exchanging of friendly amenities between a solicitor and the potential customer.

We also think it insignificant that appellant furnishes its solicitors with automobiles. *See Coors Porcelain Co. v. State, supra*, 517 P.2d 838 (Colo.1973). Congress could hardly have intended to exempt only walking solicitors. We do not think Congress intended factors such as how the solicitors get from customer to customer to be determinative of which interstate corporations enjoy § 381 immunity. The representatives' means of transportation does not change the character of their promotional activities. In our view, appellant's activities in Pennsylvania are confined to "solicitation" within the meaning of § 381.

The cases relied on by appellee and the Commonwealth Court in no way control the disposition of this case. Section 381 was not at issue in either *Standard Pressed Steel Co. v. Washington*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975), and *Colonial Pipeline Co. v. Traigle*, 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975). Neither case involved a claim that the taxpayer's activities were limited to soliciting orders. In *Standard Pressed Steel*, the out-of-state company's contact with the taxing state was a full time engineer who maintained an office in the state and whose responsibility was to advise and give consultation to the foreign company's customer there. In *Colonial Pipeline*, the taxpayer maintained pipelines and pumping stations in the taxing state. Obviously, neither taxpayer was in a position to argue that its activities were limited to solicitation of orders within the meaning of § 381.

█ Quoting nonetheless from these cases, the Commonwealth Court dismissed appellant's claim because its representatives' presence "*made possible the realization and continuance of valuable contractual relations.*" 22 Pa.Cmwlth. at 219, 348 A.2d at 760 (emphasis in original). It seems clear to us that such a standard for a claim of § 381 immunity would render this federal statute a complete nullity; the function of *any* solicitation is to "made possible the realization and continuance of valuable contractual relations." In short, we agree with the dissenting judges in the Commonwealth Court that "the [Commonwealth Court] holding almost obliterates the immunity conferred by the Commerce Clause and that it fails to give effect to the will of Congress expressed by P.L. 86–276." *Id.* 22 Pa.Cmwlth. at 227, 348 A.2d at 762 (Rogers & Blatt, JJ., dissenting).

█ Appellee's brief also raises the point that the corporate income tax does not fall within the purview of the federal statute because the tax is a "property tax" and not a net income tax. This argument is frivolous. The federal statute expressly states that "[f]or purposes of this chapter, the term 'net income tax' means any tax imposed on, or measured by, net income." 15 U.S.C. § 383 (1970). The

Corporation Income Tax is based on a corporation's taxable income, see 72 P.S. § 7502 (Supp.1977–78). It is of absolutely no moment that the tax is denominated a "property tax;" it is the basis of the tax, not the nomenclature used to describe it, that is determinative. The corporation income tax is the kind of tax to which § 381 is addressed.

We end by noting that our holding is a narrow one. Where a corporation engaged in interstate commerce seeks to do business in this Commonwealth, and that corporation's sole activity in the state consists of its representatives seeking to induce the purchase of the corporation's products by informing customers of new products, taking orders, and assisting in the display of those products, Congress intended that such corporation be exempt from any state tax based on the corporation's net income.

Order reversed and the case is remanded for proceedings consistent with this opinion.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS, J., filed a dissenting opinion in which EAGEN, C. J., joined.

ROBERTS, Justice, dissenting.

Through an unjustified interpretation of a federal statute, the majority allows appellant, United States Tobacco Co., to escape taxation on income unquestionably earned through its activities in Pennsylvania. In reaching this conclusion, the majority overlooks a controlling decision of the United States Supreme Court, Clairol, Inc. v. Kingsley, 402 U.S. 902, 91 S.Ct. 1337, 28 L.Ed.2d 643 (1971), dismissing for want of a substantial federal question, 57 N.J. 199, 270 A.2d 702 (per curiam), aff'g 109 N.J.Super. 22, 262 A.2d 213 (1970). Today's result will allow foreign corporations with income fairly attributable to activities in Pennsylvania to escape Pennsylvania taxation, thus placing a heavy and unfair burden upon domestic taxpayers, both corporate and individual. I dissent.

The facts are not in dispute. Appellant, a New Jersey corporation, manufactures and sells tobacco products in interstate commerce, distributing its products to wholesalers in Pennsylvania, who then resell to retailers. Appellant's links to wholesalers in Pennsylvania are "missionary representatives" who solicit orders, furnish appellant's promotional materials, and sometimes take orders. These orders are processed and filled at appellant's out-of-state offices.

The missionaries also visit retail outlets who sell tobacco products in Pennsylvania, encouraging retailers to make purchases of appellant's products from wholesalers. They also hand out samples of new products repurchased by appellant from its wholesalers. Some of these samples are given gratis, in exchange for preferred display space in retail outlets. Other samples are sold to retailers at the price at which the missionary representatives purchased them from wholesalers. The representatives also, at their own discretion, rotate out retailers' stale inventory by replacing it with fresh supplies the representatives carry with them, help set up retailers' counter displays, and further promote new products of appellant. As the Assistant Division Manager of appellant for Pennsylvania testified, the missionaries' "main function would be to create good will among the retail accounts throughout the territory and in the same token we are creating good will between United States Tobacco Company and the wholesale distributors," and that a representative is "in general . . . a good will ambassador for the Company." About 5% of appellant's retail product distributions in Pennsylvania were made directly by the missionary representatives.

In the absence of pre-emptive legislation, states have broad authority to regulate and tax commerce in ways that do not unduly burden it. Mr. Justice Blackmun, for an unanimous Court, stated:

> " 'It is a truism that the mere act of carrying on business in interstate commerce does not exempt a corporation from state taxation. "It was not the purpose of the commerce clause to relieve those engaged in interstate

commerce from their just share of state tax burden even though it increases the cost of doing business." *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823 (1938).' *Colonial Pipeline Co. v. Traigle*, 421 U.S. at 108, 95 S.Ct., at 1543."

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 288, 97 S.Ct. 1076, 1083 (1977), overruling *Spector Motor Service v. O'Connor*, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951).

Congress requires the states to exempt from income taxation certain corporations doing business solely in interstate commerce:

"Minimum standards

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)."

15 U.S.C. § 381(a).

In enacting Section 381, Congress intended to assure interstate corporations only that solicitation would not be subjected to state taxation. The Senate Report, 2 U.S.Code Cong. & Admin.News p. 2548 (86th Cong. 1st Sess. 1959), uses strong language in noting that "solicitation," and "no other business activities," would qualify as a Section 381

exemption. *Id.* at 2554. The Report notes that many interstate businesses were less concerned with obtaining exemption for broad classes of activities than with being certain that there is some minimal level of activity within a state below which a corporation cannot be taxed. *Id.* at 2550. This concern was touched off by *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). *Portland Cement* destabilized expectations of corporations whose selling techniques depended in part upon knowing which states could tax them and which could not. By removing the "travelling salesmen's exemption" that interstate businesses had enjoyed since *Robbins v. Shelby County Taxing District*, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887), the Court removed any such guidelines. Section 381 was designed to exclude from state taxation only mere solicitation.

Appellant's missionary representatives perform marketing functions in Pennsylvania in addition to solicitation. They supervise retail marketing of appellant's products by providing free samples to retailers to introduce new products to the market, strategically placing counter and store displays of appellant's products, replacing stale goods on retailers' shelves with fresh materials carried in cars furnished representatives by appellant and performing similar services. To ignore this business reality, in which retailers receive goods not from out-of-state after mere solicitation from appellant, but directly from appellant's representatives in Pennsylvania, is to ignore the context in which Section 381 was passed and in which it must be interpreted.

On almost identical facts, the New Jersey courts held *Clairol, Inc.* taxable in New Jersey. *Clairol, Inc. v. Kingsley*, 109 N.J.Super. 22, 262 A.2d 213, aff'd, 57 N.J. 199, 270 A.2d 702 (1970) (solicitors performed other marketing duties such as rotating stock for freshness, setting up counter displays, etc.). The United States Supreme Court dismissed *Clairol's* appeal for want of a substantial federal question. 402 U.S. 902, 91 S.Ct. 1337, 28 L.Ed.2d 643 (1971). Such a dismissal is a decision by the Supreme Court on the merits of the

particular factual situation which the case presents. *Hicks v. Miranda,* 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). Because I see no substantial difference from the facts in *Clairol* and the facts of the instant case, I believe that *Clairol* controls our interpretation of Section 381.* See also *Zucht v. King,* 260 U.S. 174, 43 S.Ct. 24, 67 L.Ed. 194 (1922) (appeal will be dismissed when state court decision on federal question is clearly correct).

My interpretation of the word "solicitation" is also consistent with the rule that Congress is presumed to respect state sovereignty and traditional state powers unless, and only to the extent, that it explicitly limits those powers. *Employees of Department of Public Health and Welfare v. Missouri,* 411 U.S. 279, 284–85, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973); 3 Sutherland, Statutory Interpretation § 62.01 at 64 n. 8 (Sands ed. 1974). We should thus interpret Section 381 to impose as few limitations upon the traditional state power to impose taxes as is consistent with the clear language of the section. Such a construction compels us to conclude that "solicitation" does not include appellant's marketing techniques.

Because appellant's representatives marketed and immediately distributed products in Pennsylvania, rather than

---

* Cases from other jurisdictions also support this distinction between mere solicitation and marketing. Two other states have explicitly construed "solicitation" to exclude even the incidentals of solicitation. *Miles Laboratories v. Department of Revenue,* 274 Or. 395, 546 P.2d 1081 (1976) (setting up counter displays, etc., not "solicitation"; particularly noteworthy because Oregon's tax scheme allowed domestic taxpayers to escape from taxation of income earned out of state in states where it failed the § 381 test); *Herff Jones Co. v. State Tax Comm'n,* 247 Or. 404, 430 P.2d 998 (1967) (corporation held taxable where collection of funds was the only activity beyond solicitation); *Hervey v. AMF Beaird, Inc.,* 250 Ark. 147, 464 S.W.2d 557 (1971). Contra, *State ex rel. Ciba Pharmaceuticals, Inc. v. State Tax Comm'n,* 382 S.W.2d 645 (Mo.1964) (pre-*Clairol*) (incidentals of solicitation did not go beyond exemption of § 381). Similarly, those other cases granting exemptions under § 381 have involved corporations whose in-state activity did not go beyond narrow solicitation. *Oklahoma Tax Comm'n v. Brown-Forman Distillers Corp.,* 420 P.2d 894 (Okl.1966) (stipulated facts); *International Shoe Co. v. Cocreham,* 246 La. 244, 164 So.2d 314 (1964), cert. denied, 379 U.S. 902, 85 S.Ct. 193 (1964).

merely solicited orders to be filled from out of state, 15 U.S.C. § 381 does not immunize appellant from taxation in Pennsylvania. I dissent.

EAGEN, C. J., joins in this dissenting opinion.