The UNITED STATES TOBACCO COMPANY *v.*
Mahlon MARTIN, Director, Department of Finance and
Administration, State of Arkansas

90-76                                    801 S.W.2d 256

Supreme Court of Arkansas
Opinion delivered December 17, 1990

*Wright, Lindsey & Jennings*, for appellant.

*John H. Theis, Robert L. Jones, William E. Keadle, Ricky L. Pruett, Cora L. Gentry, David B. Kaufman, Malcolm P. Bobo,* and *Beth B. Carson*, by: *Philip Raia*, for appellee.

JACK HOLT, JR., Chief Justice. The United States Tobacco Company (Company), a Delaware corporation with its principal place of business in Connecticut, appeals from the trial court's decision to uphold assessments by the State of Arkansas for income taxes, interest, and penalties for tax years 1980 through 1985. The Company contends that the trial court erred in characterizing the Company's activities in Arkansas as beyond the scope of "solicitation" of orders, and thus subject to state tax, and that it rendered findings of fact which were clearly erroneous and unsupported by evidence in the record. We disagree and affirm.

The appellee, Director of the Department of Finance and Administration of the State of Arkansas (Director), conducted a corporate income tax audit of the Company's sales of tobacco products to wholesalers in Arkansas and determined that the Company owed a tax deficiency, together with interest and penalties, in the amount of $449,729.84. The Director based his assessment on the Company's business activities within the state and figured the deficiency in accordance with Ark. Code Ann. §§ 26-51-205 and 702 (1987).

The Company protested the assessment, claiming that its instate activities amounted to nothing more than "solicitation" and were therefore immune from taxation under 15 U.S.C. § 381(a) (1982 and Supp. IV 1986).

Following a ruling in favor of the Director by the Administrative Hearing Board, the Company brought suit in the Chancery Court of Pulaski County to overturn the assessment. After trial, and submission of briefs by the parties, the chancellor held that the Company's activities exceeded the scope of "solicitation" as set forth in section 381(a) and provided a sufficient and requisite nexus for taxation in Arkansas. The court sustained the assessment with additional interest from the date of the assess-

ment to date of full payment. The Company now appeals.

The "business activities" at issue concern the duties and performances of five full-time consumer marketing representatives (CMRs) employed by the Company, who live and work in Arkansas.

The Company, as we said, is based in Greenwich, Connecticut. It sells its products in Arkansas through wholesalers who place orders by telephone through the Company's telemarketing department in Greenwich. Upon acceptance, orders are filled at the Company's warehouse in Greenwich and then shipped, via Nashville, Tennessee, to the wholesalers in Arkansas. The Company does not store any company-owned products in Arkansas, nor does it own or lease any property here.

It is the duty of the CMRs to promote the Company's products among consumers and retailers, who, it is hoped, will then buy the products from the wholesalers. The CMRs have no authority to accept orders or to conduct credit checks. The five representatives are salaried employees, each of whom is provided a van and approximately four to five cases of smokeless tobacco products.

Fred Dunavant, a Division Manager in the Company who conducts on-site training of the CMRs in Arkansas, testified that the CMRs visit convenience store retail outlets where they organize the display of "point of sale" or advertising materials, discuss pricing setups, and sometimes distribute free samples to patrons of the store.

In addition, the CMRs make inventory checks, both at the wholesale warehouses and at the retail stores. Dunavant testified that the CMRs check for "product movement" and for stale or obsolete products. He stated that the wholesalers normally separate the current from the stale products themselves. The CMRs then pick up the outdated products and the Greenwich office issues credit to the wholesaler.

At the retail store, the CMRs occasionally replace stale products or replenish a retailer's dwindling supply from the stock in their vans. The CMRs provide the retailer with enough cans to last until the wholesaler is to make a regular visit. Dunavant testified that the wholesale representatives visit the retail stores

approximately once or twice a week, while the CMRs visit approximately once every eight to sixteen weeks or maybe only twice a year depending on the account and promotional activities involved.

When the CMRs leave a requested product with the retailer, they usually account for it to the wholesaler through "bill throughs" wherein the retailer signs a document acknowledging receipt of the goods and the CMR delivers it to the wholesaler who bills the retailer for the product. On some occasions, the retailers pay the CMRs in cash for the replacement stock. Dunavant testified that the cash transactions were small and that the bill throughs accounted for only 11/100th of 1% of the Company's total sales in Arkansas.

Irvin McClain, former manager of Triangle Warehouse, a wholesaler of the Company's products, testified that with regard to inventory checks at the wholesaler's, the CMRs were "real strict on that inventory control." McClain testified that the CMRs sometimes replenish their van stocks from the wholesalers' supplies by paying cash or by applying bill throughs from the retailers against the products.

The chancellor, after making specific findings of fact, concluded that the CMRs' responsibilities "were separate for the most part from solicitation," in that the solicitation was regularly carried out from the Greenwich office through daily calls to the wholesalers. The chancellor likened the CMRs' duties to "quality control people."

## SCOPE OF SOLICITATION

Section 381(a), upon which the Company bases its claims of immunity, provides:

(a)  Minimum Standards

No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such persons, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

We last examined this particular section of the United States Code and its effect on corporate income taxation of foreign corporations in *Hervey* v. *AMF Beaird, Inc.,* 250 Ark. 147, 464 S.W.2d 557 (1971). After contemplating the purpose and language of the act, we concluded that Congress intended a narrow construction of the term "solicitation of orders." Because the appellee, Beaird, failed to show that its *only* business activity was the solicitation of orders, we refused to grant summary judgment in favor of tax immunity. Although the pivotal factor behind our decision in *Hervey* differs from the case at bar, we adhere to our initial, narrow interpretation of "solicitation."

In *Hervey,* unlike the present case, we were primarily concerned with the fact that Beaird, a foreign manufacturer of LP storage tanks, maintained consignment arrangements with its customers in Arkansas and therefore its activities did not pertain to solicitation of *sales* of personal property. We noted, however, that part of the duties of Beaird's representatives was to make regular checks of customer inventories and that such activity alone extended beyond the scope of solicitation of orders.

We find support for this narrow interpretation of section 381(a) in *Clairol, Inc.* v. *Kingsley,* 109 N.J. Super. 22, 262 A.2d 213 (1970). There, the Superior Court of New Jersey found that Clairol's representatives visited druggists at regular intervals, reviewed and rearranged Clairol displays, and conducted inventory checks. In addition, "detail people" called on beauty salons to instruct in the use of Clairol products. The court refused to extend section 381(a) immunity to any activity beyond mere solicitation.

Granted, other jurisdictions have not taken as narrow a view. Some have extended tax immunity to generally accepted or customary acts in the industry which lead up to the placing of orders, such as promotional activities and the initial organization of displays, yet they refuse to allow tax immunity for activities commonly associated with maintaining a business operation. Such unprotected activities may include maintaining and monitoring displays, replacing damaged or outdated goods, checking product inventory, pricing items for resale by wholesalers to retailers, and handling complaints. *See Miles Laboratories, Inc. v. Department of Revenue*, 274 Or. 395, 546 P.2d 1081 (1976); *National Tires, Inc.* v. *Lindley*, 68 Ohio App. 2d 71, 426 N.E.2d 793 (1980); *Drackett Products Co.* v. *Conrad*, 370 N.W.2d 723 (N.D. 1985); *William Wrigley, Jr. Co.* v. *Wisconsin Dept. of Revenue*, 153 Wis. 2d 559, 451 N.W.2d 444 (1989).

Still other states have declined to tax many of the activities falling within the "unprotected" category above, holding that such acts are acts of courtesy and are "inextricably related" to the eventual sale of the product. *See U.S. Tobacco Co.,* v. *Commonwealth*, 478 Pa. 125, 386 A.2d 471 (1978); *see also Gillette Co.* v. *State Tax Comm.*, 56 A.D. 2d 475, 393 N.Y.S.2d 186 (1977); *Indiana Dept. of Revenue* v. *Kimberly-Clark Corp.*, 275 Ind. 378, 416 N.E.2d 1264 (1981). For a general discussion see T. Sweeney, *State Taxation of Interstate Commerce Under Public Law 86-272: "A Riddle Wrapped in an Enigma Inside a Mystery,"* 2 B.Y.U. L. Rev. 169 (1984).

■ Under our construction of solicitation, however, it is undisputed that the CMRs' activities of 1) making inventory checks, 2) swapping out products, 3) selling products for cash from stock in their vans, and 4) buying stock from wholesalers exceed the scope of mere solicitation of orders. Even if we chose to follow the rationale of *Miles Laboratories, supra*, and *National Tires, supra*, for example, and adopted their more lenient construction of "solicitation," the CMRs' activities would still quite arguably fall within the unprotected spectrum of "activities commonly associated with maintaining a business operation." *See Drackett Products, Co.* v. *Conrad, supra.*

The CMRs in Arkansas participated in ongoing display and inventory checks. Although their visits to the retail stores were

much more infrequent than the regular visits of the wholesale representatives, they, nonetheless, checked with the retailers and replenished the stock or swapped out stale products at regular intervals. Similar inventory checks were maintained at the wholesale warehouses. This activity, in particular, places the CMRs in the business of maintaining completed sales transactions rather than merely carrying out activities incidental to the solicitation of eventual sales.

■ On appeal, we review exemption cases *de novo* and do not set aside the findings of the chancellor unless they are clearly erroneous. *Ragland* v. *General Tire and Rubber Co.,* 297 Ark. 394, 763 S.W.2d 70 (1989). There is a presumption in favor of the taxing power of the State and the claimant has the burden of establishing the right to an exemption beyond a reasonable doubt. *Heath* v. *Westark Poultry Processing Corp.,* 259 Ark. 141, 531 S.W.2d 753 (1976). We cannot say, in light of our holding in *Hervey,* that the chancellor's finding that the Company's activities exceed the scope of solicitation and provide a sufficient nexus for taxation in this state was erroneous. The Company failed to carry its burden beyond a reasonable doubt.

### FINDINGS OF FACT

The Company also maintains that the court "misinterpreted some testimony and extrapolated too broadly from the evidence," thus rendering findings of fact which were clearly erroneous and supported by evidence in the record. This argument, however, is of no moment since we find enough evidence in the record to support our holding, regardless of any possible misinterpretation of the facts by the chancellor.

The Company first objects to the court's finding that car stock kept by the CMRs was "used on a frequent and usual basis by the CMRs to replenish the stock of retailers which the CMR determined to be outdated or damaged." The Company argues that the evidence shows the visits were infrequent and that the exchange or sale of products on these visits amounted to a small percentage of the Company's total sales in the state.

It is not the frequency of the visits or volume of sales however, upon which our decision turns. We are concerned with the *nature* of the Company's activities, which, here, clearly

exceeds our narrow interpretation of solicitation. The same reasoning applies to the Company's second objection that the court mistakenly found that a CMR might go for "no more than a day or so without replenishing a retailer's stock out of his own car stock."

The Company's third objection is the chancellor's finding that "CMRs take business calls at home and keep a stock of company-owned products at home." We concede that there is thin support in the record for this finding. Our decision, however, stands independent of this finding, and a determination of the correctness of this particular finding is not necessary to our holding.

Lastly, the Company's contention that the court's finding that the cases carried by the CMRs in their vans "are purchased from various wholesalers either for cash or for trade on bill throughs" is erroneous is without merit. This fact was established by Irvin McClain, state tax auditor, and although Fred Dunavant provided a different explanation for this transaction, and one the Company contends is correct, the chancellor's finding, based on the testimony as a whole, was not erroneous. Again, we find other support in the record to justify our holding without the need for reliance on this particular fact.

Based on the above reasons, we conclude that the Company's business activities in Arkansas, through the work of their representatives, exceeded mere "solicitation" as contemplated by section 381(a) and that these activities provided a sufficient nexus for taxation in this state.

The chancellor's ruling is affirmed.

TURNER, J., dissents.

OTIS H. TURNER, Justice, dissenting. The federal statute relied upon by the appellant is 15 U.S.C. § 381(a) (1982 and Supp. IV 1986). This statute provides for immunity from income taxation of revenue derived from business activities within a state if such activities are limited to an agent's solicitation of orders which are "filled by shipment or delivery from a point outside the state." The applicable provision of the statute is quoted in the majority opinion.

The majority goes to great length to sustain an extremely narrow interpretation of the federal statute in order to defeat the immunity granted to the appellant. The intent of the federal law is to exempt from state income taxation all revenue derived from "solicitation of orders" in a particular state but sent to another state for approval or rejection and thereafter filled by out-of-state shipment. The statute also exempts solicitation of those orders that amount to consignment orders.

The legislative history of the act reflects federal concern that the individual states might impose taxes on earnings from sales obtained through mere solicitation within the state of an out-of-state company having no other significant activity within the state. S. Rep. No. 658, 86th Cong., First Sess., *Reprinted* in 1959 U.S.C. Code Cong. and Admin. News 2549.

The activities conducted by the appellant in the State of Arkansas are discussed in the majority opinion. I believe that those activities carried out by the agents for the appellant are logically classified as part of parcel of the solicitation of orders within the meaning of the federal statute. The revenue should thus be immune from income taxation by the State of Arkansas.

With facts quite similar to those presented here, the Supreme Court of the Commonwealth of Pennsylvania correctly concluded:

> Where a corporation enjoined in interstate commerce seeks to do business in this Commonwealth, and that corporation's sole activity in the state consists of the representatives seeking to induce the purchase of a corporation's products by informing customers of new products, taking orders, and assisting in the display of those products, Congress intended that such corporation be exempt from any state tax based on the corporation's net income.

*U.S. Tobacco Co.* v. *Commonwealth*, 478 Pa. 125, 386 A.2d. 471, cert. denied, 439 U.S. 880 (1978).

I would reverse the trial court and hold that the appellant's activities within the State of Arkansas are tax-exempt under the federal statute.